IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
Oxford Division

JOHN RASH,                              )
                                        )
              *Plaintiff*,              )
                                        )
v.                                      )     Civil No. <u>3:20cv224-NBB-RP</u>
                                        )
LAFAYETTE COUNTY, MISSISSIPPI           )
                                        )
              *Defendant*.              )
                                        )
                                        )
                                        )
                                        )

---

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      Plaintiff John Rash ("Mr. Rash") brings this action to vindicate his First Amendment right to engage in free speech on the grounds of the Lafayette County Courthouse ("County Courthouse"), a traditional public forum owned by Lafayette County, in Oxford, Mississippi.

2.      Lafayette County ("Defendant" or the "County"), through its Board of Supervisors (the "Board") and Lafayette County Sheriff Joey East (the "Sheriff"), has violated the First Amendment to the U.S. Constitution in two ways: (i) by retaliating against Mr. Rash by closing the County Courthouse grounds after dusk and denying a permit for him to use the grounds to project visual art because it disfavors the content of Mr. Rash's speech, and (ii) by imposing unreasonable restrictions on use of the County Courthouse grounds for protected speech.

3.      As part of the Oxford Fringe Festival, an annual art event in Oxford, scheduled for the weekend of August 8, 2020, Mr. Rash helps organize a projection art event called

1

PROJECT(ion), which displays images on the walls of buildings and other surfaces. On July 14, 2020, Mr. Rash applied for a permit to hold this event. The County denied Mr. Rash a permit to use the County Courthouse grounds, which contain a confederate statue, to project art because that art may be about the confederate statue and about the recent protests in Oxford after the death of George Floyd. In response to Mr. Rash's permit application, the County changed its policy and closed the County Courthouse grounds after dusk – when projection art can be seen. This retaliatory denial and closure of a public forum violate the First Amendment to the U.S. Constitution.

4.      In addition, the County has imposed unreasonable regulations to use the County Courthouse grounds to engage in protected speech. These restrictions are not content neutral, are not narrowly tailored to serve a significant government interest and do not leave open ample alternative channels of communication and thus are unconstitutional. These unreasonable restrictions include:

      a.  Lafayette County enacted the "after dusk" closure policy on July 20, 2020 after Mr. Rash applied on July 14, 2020 to use the County Courthouse grounds at night to project art that may contain content about the confederate statue and recent protests in Oxford. This regulation is not content neutral and not for a legitimate government purpose but rather because County officials disfavor the content of Mr. Rash's speech.

      b.  The closure of the grounds after dusk does not leave ample alternative channels of communication. Here, the County's change in policy eliminates Mr. Rash's ability to reach his audience, the attendees at Oxford's 2020 Fringe Festival.  Use of the venue earlier in the day is not a suitable alternative, as Mr. Rash's light

projections require that it be dark in order to be visible. For the past two years, artists have used light projections after dark as part of PROJECT(ion) without County restrictions and without adverse public safety consequences. The County's new dawn-to-dusk rule eliminates the only suitable forum for Mr. Rash to convey his message to his target audience.

c. The 30-day notice requirement is not narrowly tailored to any government interests as they relate to political speech and other expressive activity. The outer limit of an advance notice requirement is far lower.

d. Permitting requirements for assemblies and protests are imposed so the government can effectively deal with traffic, safety and competing use concerns. Five people create none of these concerns on the grounds of the County Courthouse, thus this capacity limit is not narrowly tailored to achieve the government's interests.

e. The County's vague, discretionary, and ambiguous permit approval process also fails to meet the high standards that are required before a prior restraint on speech in a traditional public forum will be found to pass constitutional muster.

5. Mr. Rash seeks declaratory, injunctive and other relief as this Court sees fit.

**JURISDICTION AND VENUE**

6. This action is brought pursuant to the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

7. This Court has jurisdiction over the subject matter of this action pursuant 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights jurisdiction).

8.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

9.     Attorneys' fees are authorized under 42 U.S.C. § 1988(b).

10.     Venue lies with this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

11.     Plaintiff JOHN RASH is a resident of Oxford, Lafayette County, Mississippi. He is a documentary filmmaker, photographer, visual artist, and educator. He organizes an annual art event, PROJECT(ion), as part of the Oxford Fringe Festival.

12.     Defendant LAFAYETTE COUNTY, MISSISSIPPI is a political subdivision of the State of Mississippi that can sue and be sued in its own name. The chief policy making and administrative body of the County is, and at all times relevant hereto has been, the Lafayette County Board of Supervisors.  The Board of Supervisors is comprised of five elected Supervisors, one from each of the five districts in Lafayette County. The Board of Supervisors carry out a variety of duties, many mandated by state law, including adopting orders, resolutions or ordinances that involve county affairs and appointing the County Administrator. In addition, Joey East, the Sheriff of Lafayette County, Mississippi, is responsible for law enforcement within Lafayette County, and shares authority over regulations that govern use of County facilities, including the grounds of the County Courthouse.[1] At all relevant times, Lafayette County has acted and continues to act under color of Mississippi State law.

## FACTUAL ALLEGATIONS

Protests After the Death of George Floyd

---

[1] Under Mississippi law, sheriffs "are final policymakers with respect to all law enforcement deci-sions made within their counties." *Brooks v. George Cty, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996) (citing *Huddleston v. Shirley*, 787 F. Supp. 109, 112 (N.D. Miss. 1992) and Miss. Code § 19-25-1, *et seq.*).

13.     After the death of George Floyd in Minneapolis, MN on May 25, 2020, protests erupted across the United States and the world, including in Oxford, MS.

14.     One issue that arose as part of these protests was whether to keep confederate statues that stand across the county. One such statue rests on the grounds of the Lafayette County Courthouse.

15.     Since Mr. Floyd's death, protests have occurred weekly if not daily in Oxford, including at the Lafayette County Chancery Courthouse, across the street from the County Courthouse, on the grounds of the County Courthouse and next to the confederate statue, and in the form of a march led by University of Mississippi football players that drew hundreds of marchers. These protests have been motivated in part by the presence of the confederate statue on the County Courthouse grounds.

16.     People both for and against the statue have exercised their right to free speech, to assemble and to protest.

17.     For example, on Saturday night, June 20, 2020 for about 30 minutes, an artist projected "Take It Down" in vertical letters onto the confederate statue.



---

[2] Citizens project 'TAKE IT DOWN' onto the Lafayette County Courthouse Confederate monument, The Daily Mississippian, Hadley Hitson, June 21, 2020, available at https://thedmonline.com/citizens-project-take-it-down-onto-the-lafayette-county-courthouse-confederate-monument/.

18.    The Oxford Police Department had the artist remove the projection because the light was projecting across traffic and according to the police created safety concerns.

19.    On Saturday, July 4, 2020, a group that supported the confederate statue held a permitted event on the County Courthouse grounds. At this event they displayed a confederate flag in front of the courthouse, above speakers standing on the stairs leading into the building



20.    They also stood under the confederate statute with flags and signs.

21.    On information and belief, all of these protests have been peaceful.

The County Courthouse grounds are a traditional public forum.

22.    For nearly sixty years, the U.S. Supreme Court has recognized that the grounds of government buildings, including courthouses, that are generally accessible and have historically been used for expressive activity are traditional public forums.

23.    The County Courthouse stands in the center of the Oxford Town square, which is a well-developed business district including retail, restaurants, bars and other businesses and residential housing. The grounds of the County Courthouse are partially fenced but have several openings that allow unimpeded access onto the grounds. The grounds are in effect a small park.

---

[3] Photo by John Rash.

24.     The presence of a confederate statue on those grounds has led the County Courthouse to be the site of many protests and assemblies in the past, both for and against that statute. Since May 2020 alone, there have been regular protests on the County Courthouse grounds.

25.     As a matter of history and actual use, the County Courthouse grounds are a traditional public forum. In the alternative, the County Courthouse grounds are a designated public forum. For example, the following events have been held at the County Courthouse.

26.     On August 10, 2019, as part of the Fringe Festival, the Oxford Film Festival projected films on the County Courthouse lawn.[4]

27.     On February 23, 2019, a confederate rally was held on the County Courthouse lawn near the confederate statue and ended at the confederate statute on the University of Mississippi's campus.[5]

28.     On May 2, 2018, an event for the National Day of Prayer was held on the County Courthouse grounds.[6]

29.     On March 19, 2016, an Easter celebration was held on the County Courthouse grounds.[7]

The Facility Use Policy

30.     Under authority granted by the Board of Supervisors, the County Administrator created the Facility Use Policy that governs use of Lafayette County property.

_____

[4] https://www.facebook.com/oxfordfilmfest/photos/a.417664151630/10156157090826631.
[5] Oxford community members react to Confederate protests and counterprotests, The Daily Mississippian, Grace Marion, February 23, 2019, available at https://thedmarchives.com/oxford-community-members-react-to-confederate-protests-and-counterprotests/.
[6] National Day of Prayer vigil to be held in Oxford this week, The Oxford Eagle, Alyssa Schnugg, May 1, 2018, available at https://www.oxfordeagle.com/2018/05/01/national-day-prayer-vigil-begins-wednesday-oxford/.
[7] Spring time on the Square, The Oxford Eagle, LaReeca Rucker, March 20, 2016, available at https://www.oxfordeagle.com/2016/03/20/spring-time-on-the-square/.

31.     The Facility Use Policy effective April 20, 2015 had a one-week advance notice requirement to get a permit to use Lafayette County property.[8]

32.     After a confederate rally on February 23, 2019 that started at the Lafayette County Courthouse lawn near the Confederate statue, the Board of Supervisors revised the Facility Use Policy.[9] The revisions included extending the notice requirement to 30 days and adding a $25, non-refundable fee, plus a $50 per hour fee.[10]

33.     On June 15, 2020, the Board of Supervisors amended the Facility Use Policy but only regarding use of the County Courthouse grounds.[11] This change required a permit for gatherings of five or more people on the County Courthouse grounds. Four or fewer people do not require a permit.

34.     On information and belief, on July 20, 2020, the Board of Supervisors amended the Facility Use Policy regarding use of the County Courthouse grounds to close those grounds for any use from dusk till dawn.

<u>The County has restricted Mr. Rash's speech based on its content and imposed unreasonable restrictions on use of a public forum.</u>

35.     Defendant requires people who want to hold events on the County Courthouse grounds to apply for a permit 30 days in advance for events of 5 or more people.

---

[8] Lafayette County, MS, Facility Use Policy, Effective Date: April 20, 2025, available at https://lafayettems.com/wp-content/uploads/2020/02/Facility-Use-Policy.pdf.
[9] Lafayette County Supervisors Change 'Facility Use Policy' After Confederate Rally, *hottytoddy.com*, Alyssa Schnugg, March 5, 2019, available at https://hottytoddy.com/2019/03/05/lafayette-county-supervisors-change-facility-use-police-after-confederate-rally/.
[10] Order: Board Adopted and Amended the Facility Use Policy, Lafayette County Board of Supervisors, March 4, 2019, available at http://www.deltacomputersystems.com/IMGSRV01/MS36MB/S0670/S0670445.PDF.
[11] Press Release Revision of Current Facility Use Policy in Effect for the Use of Grounds Outside the Historic Lafayette County Courthouse, available at https://www.facebook.com/lafayettecounty/photos/a.873842252683768/3259544000780236/; see also Order: Amend Facility Use Policy Regarding Use of Courthouse Grounds, Lafayette County Board of Supervisors, June 15, 2020, available at http://www.deltacomputersystems.com/IMGSRV01/MS36MB/T0756/T0756310.PDF.

36.     At the July 4, 2020 protest on the County Courthouse grounds in support of the confederate statue, mentioned above, Mr. Rash was in attendance to document events. Mr. Rash took his camera to the group in favor of the statue. A Lafayette County Sheriff's Deputy told Mr. Rash he had to go to "your side," meaning the counter protestors advocating to take the statue down. Mr. Rash was not allowed into the pro-statue area.

37.     On July 6, 2020, the Board of Supervisors voted unanimously to keep the confederate statue in place. Also, on July 6, 2020, there was a protest in Oxford advocating to take the statue down.

38.     For the past three years Mr. Rash has organized a public art event in Oxford, PROJECT(ion), as part of the Oxford Fringe Festival. In 2018 and 2019, the event included projections of artists' work onto walls and other surfaces. Last year, one artist projected scenes from the U.S. border onto the outside walls of the County Courthouse.

39.     In preparation for this year's event, scheduled for August 8, 2020, on July 7, 2020, Mr. Rash contacted the County Administrator's office via email regarding a permit application. He received no response.

40.     On July 14, 2020, Mr. Rash went to the Chancery Court Building to the County Administrator's office in person to get a permit to hold PROJECT(ion). He inquired about his previous email and was informed that the Administrator was out of the office the week prior, and that any application submitted prior to the July 20 Board of Supervisors meeting would be considered.

41.     When filing his application, he was told that if he had 4 or less people, he would not need a permit. Because he did not know how many people would ultimately attend the event, he estimated 30 people would attend.

9

42.     On July 15, the Administrator, Lisa Carwyle, called and asked what was needed in terms of set up. Mr. Rash said it would be minimal. Ms. Carwyle seemed satisfied with his answers and said the Board of Supervisors meets on July 20 and the permit would be decided then.

43.     On July 16, someone from the Lafayette County Sheriff's office called Mr. Rash and asked, "Really what I want to know, is there anything that is going to talk about the monument or things that have been going on in Oxford lately." Mr. Rash said it was likely, because the visual art at issue involves addressing current social issues, but he couldn't be sure, as artists would be in control of their own work. The Sheriff's employee responded, "If that's the case, I have to get back to you." Mr. Rash replied, "It doesn't seem appropriate to make this decision based on content." The Sheriff's employee responded, "Well we'll just have to see and get back to you."

44.     When the Board of Supervisors met on July 20 – the meeting at which Mr. Rash's permit was to be decided – the Board changed the policy regarding use of the County Courthouse grounds. On July 23, Ms. Carwyle emailed Mr. Rash and said, "I've denied the permit due to a change in the County's permit policy. No permits will be issued after dusk, due to security issues. Thanks." Mr. Rash called Ms. Carwyle and said he would go unpermitted and ensure there would be 4 or less people on the lawn to comply with the policy. She said she had to check whether that was legal. She then followed up by email on July 27, 2020, "the [County] Courthouse grounds, including the statue area, are closed for any gathering after dark, regardless of permit requirements. So you would not be allowed to be on the grounds from thirty minutes prior to dusk to sunrise. Thanks."

10

45.     Upon information and belief, the City of Oxford has granted a permit for a location adjacent to the County Courthouse for an event after dark for this year's Oxford Fringe Festival.

46.     Denying Mr. Rash's permit to engage in protected speech in a public forum because the County does not agree with the content of the speech violates the First Amendment.

47.     Imposing unreasonable restrictions on the use of a public forum for protected speech violates the First Amendment.

48.     Mr. Rash's PROJECT(ion) event at the Oxford Fringe Festival is imminent, scheduled for August 8, 2020. Mr. Rash continues to organize the event and prepare artists to display their work. The County's actions have chilled Mr. Rash's and others' speech, including causing some artists to back out of participating. Without declaratory and injunctive relief, Mr. Rash's and others' speech will be chilled and silenced.

49.     Moreover, as an Oxford resident, artist, and documentary filmmaker, Mr. Rash is likely to apply for permits to hold public events or gatherings on the Courthouse Grounds in the future, and will therefore continue to suffer future harm if enforcement of the County's unconstitutional permitting process is not enjoined.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of the First Amendment of the United States Constitution applicable to the States through the Fourteenth Amendment pursuant to 42 U.S.C. § 1983

50.     Defendant Lafayette County, through its Board of Supervisors and Sheriff, regulates use of Lafayette County property, including use of traditional public forums for protected speech activity.  At all relevant times, Lafayette County has acted and continues to act under color of Mississippi State law.

51.     Plaintiff John Rash applied for a permit to engage in protected speech on public issues – including whether to keep or take down confederate statutes – in a public forum, namely, the grounds of the Lafayette County Courthouse where a confederate statue rests.

52.     In response to Mr. Rash's permit application, Defendant changed the policy governing use of the County Courthouse grounds. It closed the grounds entirely after dusk. This action would chill the speech of others who want to engage in similar expression. Defendant took this action because it disagreed with the content of Mr. Rash's speech. Defendant has retaliated against Rash because of the content of his speech and thus has violated the First Amendment to the U.S. Constitution.

53.     Defendant's time, place and manner regulations governing use of this traditional public forum for expressive activity are not narrowly tailored to achieve a significant government interest, do not leave open ample alternative channels of communication and act as a prior restraint on protected speech, thus they violate the 1st Amendment.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief:

54.     Preliminarily and permanently enjoin, and enter a declaratory judgment stating that Defendant's policies and practices governing use the County Courthouse grounds violate Plaintiff's rights to free speech and assembly under the First Amendment to the U.S. Constitution;

55.     Preliminarily and permanently enjoin, and enter a declaratory judgment stating that Defendant's closing the County Courthouse grounds after dusk and denying a permit to use those grounds violate Plaintiff's rights to free speech and assembly under the First Amendment to the U.S. Constitution;

56. A permanent injunction requiring Defendant to issue a permit to John Rash for use the County Courthouse grounds on August 8, 2020 during the Oxford Fringe Festival for the PRO-JECT(ion) art event between 8 pm and 11 pm, and/or enjoining Defendant from interfering with or otherwise taking adverse action against John Rash or other participants in the PROJECT(ion) art event for actual or alleged noncompliance with the County's permitting policies.

57. Plaintiff's reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

58. Such other relief as the Court deems just and proper.


Dated: July 31, 2020                                        Respectfully submitted,


_____

| SIMPSON THACHER & BARTLETT LLP | AMERICAN CIVIL LIBERTIES UNION OF |
|---|---|
| Jonathan K. Youngwood* | MISSISSIPPI FOUNDATION, INC. |
| Isaac Rethy* | Joshua Tom, MS Bar. No 105392 |
| 425 Lexington Avenue | Landon Thames, MS Bar. No. 105127 |
| New York, NY 10017 | P.O. Box 2242 |
| (212) 455-2000 | Jackson, MS 39225 |
| jyoungwood@stblaw.com | Phone: (601) 354-3408 |
| irethy@stblaw.com | jtom@aclu-ms.org |
|  | lthames@aclu-ms.org |
| *pro hac vice forthcoming | |