# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**JOHN RASH**                                                    **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO.: 3:20-CV-224-NBB-RP**

**LAFAYETTE COUNTY, MISSISSIPPI**                              **DEFENDANT**

---

## DEFENDANT'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

---

COMES NOW, Lafayette County, Mississippi, the Defendant in the above-styled and numbered cause, by and through counsel, and files its Memorandum of Authorities in Support of its Response in Opposition to the Motion for Preliminary Injunction, and would state as follows:

## I. Introduction

The present motion should be denied as the plaintiff cannot establish each of the Canal Authority criteria for the granting of the extraordinary relief of a preliminary injunction in this First Amendment action concerning the proposed late-night use of the Lafayette County Circuit Courthouse grounds. First, as to demonstrating a "substantial likelihood of success on the merits", the underlying premise of plaintiff's case, that is, that the Courthouse grounds are a "traditional public forum" deserving of strict scrutiny protection, is plainly wrong and runs contrary to well-settled First Amendment principles. Second, the County's narrowly tailored policies are content – neutral and constitute reasonable time, place and manner restrictions on the use of the Courthouse facility. These restrictions, including the imposition of an evening curfew,

are supported by the substantial public safety interests at stake in limiting late-night access to the Courthouse grounds. In addition, the plaintiff has not shown that his interest in First Amendment expression has been infringed given the availability of other alternative forums which have been permitted for the so-called Fringe Festival on August 8, 2020. Finally, plaintiff's complaint concerning the County's 14 day advance permit requirement (which the plaintiff in fact satisfied) is a red herring issue and is not relevant herein because Lafayette County's denial of the plaintiff's request was not based on the facility use policy's permit requirements. Rather, the denial was based solely on the curfew. Accordingly, the present motion should be denied in all respects.

## II. Fact Summary

In 1872, the rebuilt Lafayette County Courthouse, located in the center of the City of Oxford, opened. As the court is aware, the County Courthouse grounds are generally configured in an octagon shape (not including the confederate monument area) and are bordered on all sides by a sidewalk connecting to cross walks on each side of the Courthouse. A heavily travelled roadway (uncontrolled by traffic signals) routes traffic in a single direction around the Courthouse, separating it from the retail shops, restaurants, bars and other businesses which form the "Oxford Town Square," The "Square" functions as the cultural, economic and social center of the Lafayette County-Oxford community. The Courthouse and the contiguous grounds fall within the jurisdiction of the Lafayette County Board of Supervisors.

Prior to 2015, the Lafayette County Board of Supervisors (the "Board") had not enacted an ordinance or policy governing the use of all County facilities, including the Courthouse. On April 20, 2015, the Lafayette County Administrator (the County's Executive Officer), under the

2

authority granted by the Board of Supervisors, adopted a "Facility Use Policy" which governed "the use of public areas of buildings or facilities owned, leased or otherwise occupied exclusively by Lafayette County government that are used for the conduct of county operational business." (2015 Policy, exhibit a hereto). While noting that the "primary use of the County facilities is for the conduct of county government business," the policy allowed for the use of these facilities by certain groups, namely: (1) nonprofit citizen groups that are located in or doing business in Lafayette County, (2) state/local political parties, and (3) individuals from any political group, or similar gathering of individuals, who are meeting for the purposes of engaging in political discussion." (2015 Policy, p. 1). The policy required that any use of the facilities would be by permit which was required to be applied for at least one week in advance of the proposed use. Any permission granted for use of County facilities was limited to Monday through Friday between the hours of 8:00 AM and 10:00 PM and that "use on weekends or after 10:00 PM is limited and must primarily be events coordinated and staffed by County employees and/or officials." (2015 policy, p. 2). The County reserved the right to deny applications for use "if the use would pose health or safety risks." (Policy, p. 2).

The Board amended the Facility Use Policy on March 4, 2019. (2019 Policy, Exhibit B hereto). The 2019 amendments extended the permit application deadline from 14 days to 30 days, added a $25 permit fee, and use fees at the rate of $50 per hour. (2019 policy, p. 3). There were no other relevant changes to the policy. On June 15, 2020, the Board amended the policy to allow "4 people or less to use the historic Courthouse outside grounds, including the area around the confederate statue, without a permit." (June 15, 2020 Board minutes, Exhibit C hereto). The board order amending the facility use policy confirmed that a permit was to be submitted at least

30 days prior to the date of the proposed use for "5 or more people, less unusual circumstances make it impossible to make application prior to the 30 day period."

In March 2010, Sheriff Joey East, elected in November 2019 and serving his first term in office starting January 2020, approached the Board of Supervisors regarding his concerns over the use of the Courthouse grounds during the evening hours which he believed posed an undue pedestrian and traffic safety risk and a strain on limited law enforcement resources. According to East, drawing on his experience as the former City of Oxford Chief of Police, he believed that the board should consider prohibiting use of the Courthouse grounds after dark given the amount of vehicular and pedestrian traffic around the square and due to what he perceived to be poor lighting conditions. Based on Sheriff East's suggestion, the Board again amended the facility use policy by closing the Courthouse grounds for all uses from "dusk to dawn." (July 20, 2020 Board minutes, Exhibit D hereto). The July 2020 amendment also shortened the advance application requirement to 14 days and eliminated use fees.

In the late Spring/early Summer of 2020, the Yoknapatawpha Arts Council ("YAC") announced on its web site the production of "The Art-ER Limits" (also known as the "Fringe Festival") to take place on August 7 thru 9, 2020. (YAC Notice, Exhibit E hereto). The event comprised a number of art and theater related productions at various locations in Oxford. According to the announcement, event organizers planned a "Projection Art Showcase – PROJECT(ion)" to take place on the Oxford Square on August 8 starting at 9:00 pm. On July 14, 2020, plaintiff John Rash submitted a permit application to Lisa Carwyle, the Lafayette County administrator, seeking to use the "east side" of the Courthouse to project a visual art display as part of the PROJECT(ion) event Rash organized around the Courthouse Square. Essentially, the PROJECT(ion) display event, which Rash planned for August 8 starting at 8:00

4

pm and concluding at 10:00 pm, was to include an area adjacent to the Oxford City Hall (the former Skipwith area) so that Rash's proposed use of the East side of the Courthouse would supplement the same projection art display at City Hall. According to Rash, he wanted "the opportunity to use the Courthouse area this year due to COVID so that it can be viewed by cars driving by or people parked in the adjacent spaces around the Square.) (Rash email to Carwyle dated July 7, 2020; Exhibit F hereto). In accordance with the County's existing Facility Use Policy, Rash was contacted by Scott Mills of the Lafayette County Sheriff's Department who asked about the nature of the proposed use in order to assess whether and to what extent additional security measures were needed during the event.

As for the City Hall location, event organizers, with Rash's involvement, submitted a permit application to the City of Oxford on July 16, 2020 seeking permission to use the "City Hall Plaza" on August 8 from 5:00 pm to 11:30 pm to stage the PROJECT(ion) event. (Oxford Permit Application, Exhibit G hereto). The permit was approved by the City on August 4, 2020.

On July 23, 2020, Carwyle informed Rash that the permit for use of the Courthouse was denied based on the County's Facility Use policy which prohibited any use "after dusk due to security issues." (Carwyle email to Rash, Exhibit H hereto).

### III. Argument

#### A. Summary of Argument

The plaintiff is not met his burden in proving each of the Canal Authority elements and demonstrating his entitlement to the "extraordinary remedy" of preliminary injunctive relief. See Google, Inc. v. Hood, 822 F.3d 212, 220 (5th Cir. 2016). In particular, the plaintiff is not shown that he has a substantial likelihood of success on his First Amendment claim which is premised on the proposition that the Lafayette County Courthouse is a "traditional public forum"

5

deserving of strict scrutiny protections in terms of the authority of Lafayette County to impose terms on the use of the Courthouse grounds. Further, even if the Courthouse grounds can be characterized as a "public forum" within the meaning the First Amendment, , Lafayette County is entitled to impose content-neutral "time, place, manner" restrictions on the use of the grounds which it has done in this case in the form of its facility use policies. Clearly, establishing a form of "curfew" on the use of the Courthouse grounds which prohibits any uses during the evening hours when pedestrian and traffic safety interests are at their strongest, is a content-neutral time restriction. Again, assuming the Courthouse grounds is a "public forum," the content-neutral time restriction would be subject to "intermediate scrutiny" which requires that the restriction be narrowly tailored to achieve a significant government interest and which otherwise leaves open "ample alternative channels of communication." The time restriction at issue which resulted in the denial of plaintiff's permit application advances a significant governmental interest, and given the inclusion of the "City Hall Plaza" in the proposed PROJECT(ion) event, the plaintiff had ample alternative means to communicate the projection display. In that sense, the plaintiff cannot demonstrate "irreparable harm" under the circumstances as his First Amendment rights of expression have not been meaningfully impaired. Finally, because the plaintiff's permit application was denied on the basis of the time restriction and not on any "advance notice" application requirements contained in the facility use policy, these issues are not relevant to plaintiffs' First Amendment claim.

**B.     Canal Authority Criteria**

In Newsome v. Miss. High Sch. Activities Assoc., 2007 U.S. Dist. LEXIS 88478 (N.D. Miss. 2007), this Court delineated the legal standards applicable to requests for preliminary

injunctive relief, recognizing that, typically, the purpose of such relief is to "preserve the status quo." Pursuant to <u>Canal Authority of Florida v. Callaway</u>, 489 F.2d 567, 572 (5th Cir. 1974) the movant bears the burden of "clearly establishing" the following four criteria: (1) a substantial likelihood of success on the merits, (2) a substantial threat that the movant will suffer irreparable injury for which there is no adequate remedy at law, (3) that the threatened injury to the movant outweighs any damage that the defendant might suffer, and (4) that granting the order will not disserve the public interest. The failure to sufficiently establish any one of the four factors "requires the court to deny the movant's request for preliminary injunction." See <u>City of Dallas v. Delta Airlines, Inc.</u> 847 F.3d 279, 285 (5th Cir. 2017). The court in <u>Newsome</u> acknowledged, in citing <u>Weinberger v. Romero – Barcelo</u>, 456 U.S. 305, 312 (1982) that "the basis for injunctive relief in the federal courts is always been irreparable injury and the inadequacy of legal remedies." Furthermore, when a party seeks a "mandatory" injunction that alters the status quo by commanding a positive act, the standard for granting preliminary injunctive relief is higher. See <u>Groves v. Patterson</u>, 2009 U.S. Dist. LEXIS 131820 (N.D. N.Y. 2009) (in cases of mandatory injunction, a movant must make a clear and substantial showing of likelihood of success on the merits); <u>see also</u> <u>Arbor Bend Villages Hous., LP v. Tarrant County Hous. Fin. Corp.</u>, 2002 U.S. Dist. LEXIS 10232 (N.D. Tex. 2002) (heightened showing is required where issuance of an injunction would provide movant with substantially all the relief it seeks; in such cases, the district court's decision must be "correct").

## A. Substantial Likelihood of Success on the Merits

In the context of a First Amendment claim concerning a local governmental policy, "when considering the likelihood of success, the district court should inquire whether there is a

7

sufficient likelihood the governmental entity will ultimately fail to prove its regulation constitutional. See Byron v. Landreth, 566 F.3d 442, 446 (5th Cir. 2009). The defendant acknowledges that in the First Amendment context, the other three elements of the Canal Authority criteria will ordinarily rise and fall together with the plaintiff's likelihood of success on the merits. See Opulent life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012). Regardless, the Fifth Circuit has recognized that the "invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury." Google, Inc. v. Hood, 822 F.3d 212, 228 (5th Cir. 2016). In other words, "a preliminary injunction is not appropriate unless the party seeking it can demonstrate that First Amendment interests are either threatened or in fact being impaired at the time relief is sought." Id. Ultimately, it is plaintiff's burden to make a clear showing that he is likely to succeed on the merits.

The nature and extent of the constitutional protections accorded to speech essentially depends on the form in which it is spoken. Fairchild v. Liberty Indep. School Dist., 597 F.3d 747, 757 (5th Cir. 2010). The Supreme Court has broadly identified three distinct categories of government property for First Amendment purposes: (1) traditional public fora, (2) designated public fora, and (3) limited public fora." See Walker v. Sons of Confederate Veterans, Inc., 135 S.Ct. 2239 (2015). Identifying which is at issue is determinative because the degree of scrutiny under which the government's regulation is evaluated is largely governed by the kind of forum the government is attempting to regulate. For both traditional and designated public fora, a time, place, manner restriction can be placed only if it is content neutral, narrowly tailored to achieve a significant government interest, and leaves open ample alternative channels of communication. See Moore v. Brown, 868 F.3d 398, 403 – 04 (5th Cir. 2017). In contrast, any restrictions made on expressive activity in a limited public forum only must be reasonable and viewpoint neutral.

### 1. Courthouse is not a "Traditional Public Forum"

Without citing any supporting authority, the plaintiff advances the proposition that the Lafayette County Court house grounds are a "traditional public forum." This proposition has been rejected by virtually every court which has considered the issue. See Verlo v. City and County of Denver, 741 Fed. Appx. 534, 544 (10th Cir. 2018) (traditionally, Courthouse grounds have not been considered public fora; this category is typically reserved for (1) parks, (2) streets and (3) sidewalks). See also Comfort v. McLaughlin, 473 F. Supp.2d 1026, 1028 (D.C. Cal. 2006) (rejecting argument that Courthouse grounds were public forum because shared "many characteristics with public park;" courthouses are not areas that traditionally have been made available for public assembly and debate nor is primary purpose to provide platform for members of public to espouse abuse). In our case, the Lafayette County Courthouse clearly not a traditional public forum.

### 2. The Lafayette County Courthouse is not a designated public forum

The plaintiff makes brief mention in footnote that, alternatively, the Lafayette County Courthouse grounds are a "designated public forum." Generally, a government entity may create a designated public form if the government property has not traditionally been regarded as a public forum "but is intentionally opened up for that purpose." Pleasant Grove City v. Summun, 555 U.S. 460, 470 (2009). The government does not create a designated public forum by inaction or by permitting limited discourse but only by intentionally opening a nontraditional forum for public discourse. See Cornelius v. NAACP legal Defense fund, Inc., 473 U.S. 788, 802 (1985). "Public discourse" in this context means "indiscriminate use". Hazelwood School Dist. v. Kuhlmeyer, 484 U.S. 260, 267 (1988). The government must make the property at issue "generally available" or "generally open." On the other hand, a designated public forum is not

9

created when the government allows selective access for individual speakers rather than general access for a class of speakers. See Arkansas Educational Television Commission v. Forbes, 523 U.S. 666, 677 (1998). Thus, "the government does not create a designated public forum when it does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission." Forbes, Id at 679. In resolving this issue, the Supreme Court has looked to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum. The court also examines the nature of the property and its compatibility with the expressive activity to discern the government's intent. See Forbes, Id at 679; see also Walker, 135 S. Ct. at 2250.

The plaintiff makes no argument in light of the above criteria, only pointing out that the County has "permitted" certain activities on the Courthouse grounds. Of course, the existence of a permitting scheme for use of the grounds contradicts the notion that the County has created a "designated public form" for the general and unfettered use of the general public. In addition, the County has enacted a facility use policy which limits the nature of the activities (nonprofit and political organizations) and time of use (Monday through Friday), all subject to specific permission. These provisions clearly do not satisfy the elements necessary to establish a designated public forum. Essentially, the County has created a "limited public forum" which allows the County to impose "reasonable" and viewpoint neutral restrictions on the use of the grounds. This it has clearly done so.

### 3. The County's time restriction is content neutral

Even if we assume that the Lafayette County Courthouse grounds are either a traditional or "designated" public fora,, the County is entitled to impose reasonable "time, place, manner" restrictions which are content neutral. As the Fifth Circuit has held, content neutral regulations of time, place, and manner of expression in a public forum are permitted when they are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. See Moore, 868 F.3d at 403- 04; see also Packingham v. North Carolina, 137 S.Ct. 1730, 1736 (2017). Thus, a content neutral restriction does not undergo "strict scrutiny." Rather, such restrictions are evaluated under "intermediate scrutiny" which the Fifth Circuit has emphasized "does not require that the least restrictive means be used." Moore, 868 F.3d at 404. "As long as the restriction promotes a substantial governmental interest that would be achieved less effectively without the restriction, it is sufficiently narrowly tailored." Serv. Employees International Union v. City of Houston, 595 F.3d 588, 596 (5th Cir. 2010). Rules that incidentally burdens speech are evaluated in terms of their general effect. See Baby Dolls Topless Saloons, Inc. v. City of Dallas, 295 F.3d 471, 485 (5th Cir. 2002). By the same token, if a substantial portion of the burden on speech does not advance the goals of the rule, the rule is not narrowly tailored. See Knowles v. City of Waco, 462 F.3d 430, 434 (5th Cir. 2006).

The County's facility use policy, to the extent it imposes an evening curfew, is clearly a content – neutral regulation of time, place, and manner. Accordingly, assuming that the Courthouse grounds constitute a public forum, the time restriction at issue is subject to intermediate scrutiny. First, the courts which have considered similar time restrictions, that is, curfews pertaining to the availability of even "traditional" public forums like parks, have consistently ruled that a government's interest in safety and the coordination of uses of extremely

11

limited space are substantial as a matter of law. See Moore, 868 F.3d at 404; see also Lauder, Inc. v. City of Houston, 751 F. Supp.2d 920, 930 (S.D. Tex. 2010) (evidence amply supports a finding that the city's interest in public safety and aesthetics are substantial). "Public safety is not only a substantial government interest, but a compelling one at the heart of government's function." Houston Chronicle Publishing Co. v. City of League City, 488 F.3d 613, 622 (5th Cir. 2007).

Although the plaintiff points to a conversation he had with a sheriff's deputy who inquired about the nature of the use as evidence that the curfew was motivated by the Government's disagreement with his proposed speech (and therefore the time restriction is not content neutral), that is not the case. The Deputy, Scott Mills, was simply following the then existing facility use policy which required the Sheriff's Department to review all permit applications to determine whether the proposed use required security measures unique to the use. That is simply good government and due deference to the potential safety and security concerns arising from the use of a centrally located County facility.

Regarding "narrow tailoring", again, this level of scrutiny does not require that Lafayette County adopt the "least restrictive means" to advance the significant government interest at stake. In consultation with Sheriff East, the Lafayette County Board of Supervisors determined that the interest of pedestrian and traffic safety substantiated the need to impose a nighttime prohibition on the use of the grounds. These interests are clearly suggested under the circumstances and environment of the Courthouse which stands at the center of a very busy town Square. Also, the area is poorly lit and typically serves as a "pass-through" for pedestrians walking to the area shops, restaurants and bars. Significantly, the area is frequented by students enrolled at the University of Mississippi who are drawn by the bars and restaurants located in

12

and around the town Square. Further, recent experiences with individuals desiring to demonstrate in front of the confederate statue demonstrated a real and ongoing pedestrian and traffic safety issue which posed a strain on the Sheriffs Department during the daylight hours when these demonstrations occurred. Allowing organized use of the Courthouse grounds during the late evening hours posed in unnecessary and unreasonable risk to pedestrian traffic safety.

Finally, the plaintiff has ample alternatives to the proposed use. Quite frankly, given that the plaintiff is staging the art display at the "City Hall Plaza" on the same date and time as the proposed use of the courthouse facilities, not only are there "ample alternatives" available to the plaintiff, he has in fact availed himself of those opportunities. In any event, the guarantees of the First Amendment have never meant "that people who want to propagandize protest or views have a constitutional right to do so whenever and however and wherever they please." Greer v. Spock, 424 U.S. 828, 836 (1976). The touchstone is whether the alternative spaces allow the speaker to reach a similar audience. See Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 655 (1981). For example, in Grisham v. city of Fort Worth, 2015 WL 3901612 (N.D. Tex. 2915), the government required speakers with a message that they wished to share with participants in a Festival to do so at a location immediately across the street from the Festival's footprint. The court found that the speakers could effectively convey their views to participants in the Festival from the other side of the road. Because the plaintiff in our case has in fact arranged to produce his video display at the City Hall Plaza which is within feet of the East side of the Lafayette County Courthouse (the area of the proposed use), the plaintiff clearly has ample alternative means to communicate art display.

13

**4.     Lafayette County's facility use policy survives intermediate scrutiny**

Based upon the foregoing, the relevant policy at issue, that is, Lafayette County's imposition of a reasonable time, place, manner restriction which precluded plaintiff's proposed use of the Lafayette County grounds on August 8 between the hours of 8:00 PM and 11:00 PM, survives intermediate scrutiny because the restriction is content – neutral, advances significant governmental interests in pedestrian and traffic safety and leaves the plaintiff ample alternative avenues of expression.

**5. The advance permit application deadline is not at issue**

The plaintiff also complains that the County's 30 day advance permit application requirement impermissibly infringes on his First Amendment rights. Yet, the evidence and record is clear that the County's facility use policy, at the time the plaintiff submitted his application, only required a 14 day advance application, a requirement which the plaintiff satisfied. More to the point, however, is the fact that the plaintiffs permit application was not denied on this basis. Therefore, the plaintiff's argument on this point simply presents red herring issues.

**B. The plaintiff has not demonstrated irreparable harm**

It is also plain's burden of making a clear showing as to irreparable harm. Although in the First Amendment context the establishment of a substantial likelihood of success would typically satisfy the irreparable harm element, that is not a given period even in the First Amendment context, the issuance of a preliminary injunction requires an injury that is imminent or ongoing. See Hood, 822 F.3d at 228. Here, the fact that the plaintiff has been granted

14

permission to stage his PROJECT(ion) art display at the City Hall Plaza nullifies any argument that the denial of the subject permit resulted in irreparable harm.

## IV.     Conclusion

Wherefore, premises considered, the Defendant respectfully requests that this Court deny the present motion. The Defendant also requests any other relief which the court may find warranted in the premises.

THIS, the 5th day of August, 2020.

Respectfully submitted,

CLAYTON O'DONNELL PLLC
1300 ACCESS ROAD, SUITE 200
P.O. Drawer 676
Oxford, MS  38655
Telephone:  (662) 234-0900
Facsimile:  (662) 234-3557

/s/ David D. O'Donnell
**DAVID D. O'DONNELL, MSB #3912**
*Attorney for Lafayette County, Ms.,*
*Defendant*
dodonnell@claytonodonnell.com

## CERTIFICATE OF SERVICE

I, David D. O'Donnell, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 5th day of August, 2020.

/s/ David D. O'Donnell
**DAVID D. O'DONNELL, MSB# 3912**
dodonnell@claytonodonnell.com

15