IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JOHN RASH                                                                                  PLAINTIFF

V.                                                                     CIVIL ACTION NO. 3:20-cv-224-NBB-RP

LAFAYETTE COUNTY, MISSISSIPPI                          DEFENDANT

**MEMORANDUM OPINION**

       This cause comes before the court upon the plaintiff John Rash's Motion for Preliminary Injunction. The court conducted a hearing on the plaintiff's motion on August 5, 2020, at which both parties elicited witness testimony. Upon due consideration of the motion, response, exhibits, testimony, and applicable authority, the court is ready to rule.

Factual Background

       Plaintiff John Rash filed his complaint and the present motion on July 31, 2020, challenging and seeking preliminary injunctive relief against the enforcement of the permitting policies of defendant Lafayette County, Mississippi – policies which Rash asserts unlawfully infringe upon his First Amendment right to engage in free speech on the grounds of the historic Lafayette County Courthouse in the Oxford, Mississippi town square. Rash is an Oxford resident who works as a documentary filmmaker, photographer, visual artist, and educator. Rash has organized an annual art event called "PROJECT(ion)" as part of Oxford's annual "Fringe Festival." This year's festival is scheduled to take place on the weekend of August 7, 2020, with Rash's PROJECT(ion) event to take place on the evening of August 8. The past events have included light installations projected onto the courthouse, some with political themes. Because of the light projection nature of the art installation, it must occur after nightfall to be visible.

The Lafayette County Courthouse, built in 1872, stands in the center of the Oxford town square and is listed on the National Register of Historic Places. Its grounds are open to the public and function as a public park with grass, benches, trees, and pedestrian pathways. The courthouse grounds have long been a site of protests, rallies, and other community activities. Use of the grounds was largely unregulated until 2015 when the County established a permitting process for public gatherings and other uses. On April 20, 2015, the County adopted a "Facility Use Policy" which governs the use of the public areas of County-owned property including the courthouse. The policy allows for use of these County facilities by certain groups, namely nonprofit citizen groups located in or doing business in Lafayette County, state and local political parties, and individuals from any political group meeting for the purpose of engaging in political discourse. The original policy required that any use would be by permit, and the permit application had to be submitted to the County Administrator at least one week in advance of the proposed use. Granted permits were limited to use from Monday through Friday between the hours of 8:00 a.m. and 10:00 p.m. and "use on weekends or after 10:00 p.m. is limited and must primarily be events coordinated and staffed by County employees and/or officials." The County reserved the right to deny applications for use "if the use would pose health or safety risks." On March 4, 2019, the County amended the permit application deadline from one week to 30 days prior to the event date (the "30-day rule") and added a $25 permit fee and use fees at the rates of $50 per hour. On June 15, 2020, the County amended the policy to include the requirement of a permit for all gatherings involving more than four people (the "five-person rule"). The policy was subsequently amended on July 20, 2020, prohibiting use of the courthouse grounds from between thirty minutes before dusk until sunrise (the "dusk-to-dawn rule"). This amendment

also shortened the advance application requirement from 30 days to 14 days and eliminated use fees.

The courthouse and its grounds constitute County property within the City of Oxford, with the surrounding areas of the Oxford town square falling under the City's jurisdiction. The Oxford town square is a center of civic life in the City and County and is surrounded by restaurants, bars, retail stores, offices, banks, and government buildings.

In 1906 and 1907, the United Daughters of the Confederacy and the United Confederate Veterans erected two Confederate monuments in Lafayette County – one on the campus of the University of Mississippi and the other at the southern edge of the courthouse grounds. The monuments have been the subject of public debate and protest for years but have become the subject of renewed political activity recently following the death of George Floyd, a Minnesota African-American man killed by a police officer during an arrest. Protests at the monument occurred frequently throughout June and July 2020, and none escalated to violence.

In the spring of 2020, the Yoknapatawpha Arts Council announced that "The Art-er Limits" arts festival, also known as the "Fringe Festival," would take place on August 7-9, 2020. The event will include a number of art and theater-related productions at various locations in Oxford. On July 14, 2020, plaintiff John Rash submitted a permit application to Lafayette County Administrator Lisa Carwyle, seeking to use the Lafayette County Courthouse as the surface of a light projection visual art display as part of the "PROJECT(ion)" art installation Rash has organized around the Oxford town square in conjunction with the Fringe Festival. Rash is an Oxford resident who works as a documentary filmmaker, photographer, visual artist, and educator. He has organized the PROJECT(ion) art event for the past three years as part of the Fringe Festival. Last year's event included projections onto the courthouse. Because of the

nature of the installation, i.e., light projection, the event must occur after dark to be visible. Rash sought permission to use the courthouse grounds from 8:00 p.m. to 10:00 p.m.

On July 16, 2020, Rash was contacted by Lafayette County Sheriff's Deputy Scott Mills to inquire about Rash's permit application. Rash informed Mills that the visual art display would include, among other things, themes related to the Confederate monument. Mills informed Rash that he would get back with him regarding the permit application.

The County amended its Facility Use Policy on July 20, 2020, to include the aforementioned "dusk-to-dawn rule." On July 23, 2020, the County Administrator informed Rash by email that his permit had been denied, stating: "I've denied the permit due to a change in the County's permit policy. No permits will be issued after dusk, due to security issues." Upon Rash's additional inquiry as to whether he could hold the event unpermitted if he ensured that no more than four people were present, the County Administrator stated that "the Courthouse grounds, including the statue area, are closed for any gathering after dark, regardless of permit requirements. So you would not be allowed to be on the grounds from thirty minutes prior to dusk to sunrise."

Rash and Fringe Festival event organizers from the arts council also submitted a permit application to the City of Oxford on July 16, 2020, seeking permission to use, as an alternative site, the area around City Hall, which is located directly across the street from the courthouse on the east side of the Oxford town square. This site would be used on August 8 from 5:00 p.m. to 11:30 p.m. to stage the PROJECT(ion) event. Projection in this area will require the erection of a large film screen. This permit application was approved by the City of Oxford on August 4, 2020.

4

The court held a preliminary injunction hearing in this case on August 5, 2020. Argument was heard from the parties, and the plaintiff testified along with defendant's witnesses County Administrator Lisa Carwyle and Lafayette County Sheriff Joey East. The court recessed to take the matter under advisement and now issues its ruling herein.

Analysis

In seeking the issuance of a preliminary injunction, the movant must clearly establish the following: (1) a substantial likelihood of success on the merits, (2) a substantial threat that the movant will suffer irreparable injury for which there is no adequate remedy at law, (3) that the threatened injury to the movant outweighs any damage that the defendant might suffer, and (4) that granting the order will be in the public interest. *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). Failure to establish any one of the four factors results in denial of the motion for preliminary injunction. *See City of Dallas v. Delta Airlines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). The Fifth Circuit has recognized that, in the First Amendment context, the other three elements of the *Canal Authority* criteria rise and fall together with the plaintiff's likelihood of success on the merits. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012).

According to the plaintiff, the County's amendments to the Facility Use Policy have the cumulative effect of unreasonably restricting speech and other constitutionally-protected activity on the courthouse grounds. Specifically, the plaintiff takes issue with the "30-day rule," the "five-person rule," and the "dusk-to-dawn rule." As noted, the 30-day rule has recently been amended to 14 days. While the court finds the 14-day requirement reasonable, analysis of this specific amendment is unnecessary here as Rash's application met the deadline and was not denied on this basis. Rash's argument as to the five-person rule appears to represent a facial

constitutional challenge to the Facility Use Policy, as the recently-adopted rule had no bearing on the denial of his permit application. In ruling on Rash's motion for preliminary injunction, however, the court is concerned at present only with the basis for the denial of Rash's motion, that is, the dusk-to-dawn rule.

The plaintiff asserts that the dusk-to-dawn rule is overbroad, that the County's explanation for the rule and its reason for denying Rash's application, i.e., "security concerns," are too vague, and that the County's reliance on the rule to deny Rash's application is pretextual and retaliatory.

The plaintiff points to the fact that the dusk-to-dawn rule was enacted four days after his conversation with Deputy Scott Mills, noting that the temporal proximity of these two events indicate retaliatory closure of the forum on the part of the County. Lafayette County Sheriff Joey East testified at the preliminary injunction hearing that he approached the Lafayette County Board of Supervisors as early as March 2020, two months after his first term as sheriff began, but well before the plaintiff herein applied for the permit to use the courthouse lawn, regarding his concerns over the use of the courthouse grounds during evening hours, which he believes pose an undue strain on limited law enforcement resources. Drawing on his experience as the former City of Oxford Police Chief, East testified that in his opinion use of the courthouse grounds should be prohibited after dark given the amount of vehicular and pedestrian traffic around the square and due to what he perceives as poor lighting conditions. Though the Facility Use Policy was amended shortly after Rash's application, it is clear discussions regarding such an amendment predate Rash's application by several months. The court therefore finds an unlikelihood of success on the merits as to Rash's First Amendment retaliation claim.

Regarding security concerns, East further testified about the County's limited law enforcement resources and the unique situation created by the Lafayette County Courthouse, as it sits surrounded by City property and jurisdiction. East testified that his jurisdiction covers approximately 670 square miles patrolled by 44 deputies. In contrast, the City of Oxford encompasses 26 square miles and is patrolled by a police department comprised of more than 80 officers. Because the small area covered by the courthouse and grounds is in the center of the town square, surrounded by City property, any calls requiring the need for law enforcement to the courthouse and grounds can be met with considerable delay, as the limited sheriff's deputies available are likely spread throughout Lafayette County at any given time.

The County, through its board of supervisors in consultation with Sheriff East, determined that the interest of pedestrian and traffic safety substantiated the need to impose a nighttime prohibition on the use of the grounds which are at the center of the poorly lit and heavily trafficked courthouse square. Further, East testified that recent experiences with individuals desiring to demonstrate on the courthouse grounds demonstrated a real and ongoing pedestrian and traffic safety issue which posed a strain on the Sheriff's Department even during daylight hours. The County's position that allowing organized use of the courthouse grounds during late evening hours poses an even greater risk to pedestrian traffic safety is reasonable.

Further, though no evidence was presented that prior protests on the courthouse grounds or around Oxford have escalated to violence, both sides in this action acknowledge the altered climate in the nation after the killing of George Floyd. It is reasonable that the County would take note of the violence that has erupted in other towns and cities and take extra precautions during this tumultuous time to protect the safety of its citizens. The court finds the County's security concerns valid and not pretextual or retaliatory, and the court declines to ignore the

professional judgment of Sheriff East, County Administrator Carwyle, and the Board of Supervisors.

The court also finds that the dusk-to-dawn rule, which resulted in the denial of the plaintiff's application, is content neutral and, as written, applies to prohibit all public gatherings on the courthouse grounds during this evening and overnight time frame. Content neutral regulations of time, place, and manner of expression in a public forum are permitted when they are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. *See Moore v. Brown*, 868 F.3d 398, 403 (5th Cir. 2017). As the rule is written, the dusk-to-dawn prohibition applies to all groups and would include pro-Confederate monument and anti-Confederate monument protestors as well as any other collective of people.

Further, though the court appreciates the significant visual impact that would be afforded by light projection onto the large white-surfaced courthouse in the center of the square, the plaintiff has been afforded an alternative forum at Oxford City Hall, directly across the street from the County Courthouse, where he may produce his PROJECT(ion) installation. It is axiomatic that the First Amendment does not guarantee "that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *Greer v. Spock*, 424 U.S. 828, 836 (1976) (quoting *Adderley v. Florida*, 385 U.S. 39, 48 (1966)). The court must consider whether the alternative space allows the speaker to reach a similar audience. *See Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981). Because the plaintiff in the present case has arranged to produce and been permitted to produce his art installation at City Hall, which is within mere feet of the east side of

8

the County Courthouse, the plaintiff has ample alternative means to communicate his message to a similar, if not practically identical, audience.

Further, by the County declining the plaintiff's application to use the courthouse lawn at night, the County is not prohibiting any message of the plaintiff, only the manner in which the plaintiff may present his message. The plaintiff remains free to express his views in an alternative manner during daylight hours on the Lafayette County Courthouse grounds if he so chooses and meets the additional permitting guidelines. Again, it is the mode of delivery, i.e., light projection at night, and not the message which is quelled by the County's actions here – actions which are within the County's rights. "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Greer*, 424 U.S. at 836.

The court notes that both parties spent a significant amount of argument and briefing addressing the issue of whether the Lafayette County Courthouse is a traditional, designated, or limited public forum. The court finds a determination of this issue unnecessary, as it is the opinion of the court that the County's actions survive whatever level of scrutiny is applicable to each forum designation. The facts of the present case show a content-neutral policy which, according to the evidence before the court, has been applied at least thus far in a neutral and non-discriminatory manner, the plaintiff showing no evidence to the contrary. The restriction is narrowly tailored and promotes a valid, significant, and substantial interest of the County in protecting the public and doing so by utilizing its limited law enforcement resources in the most reasonably efficient manner possible. The court finds lacking a substantial likelihood of the plaintiff's success on the merits and further finds that the alleged injury is not irreparable, as the

plaintiff has been afforded a sufficient alternative forum within feet of the County Courthouse which will reach the same audience.

## Conclusion

For the forgoing reasons, the court finds that the plaintiff's Motion for Preliminary Injunction is not well taken and should be denied. A separate order in accord with this opinion shall issue this day.

This 6th day of August, 2020.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE