IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
Oxford Division

| | | |
|---|---|---|
| JOHN RASH, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 3:20-cv-224-NBB-RP |
| | ) | |
| v. | ) | |
| | ) | |
| LAFAYETTE COUNTY, MISSISSIPPI, | ) | **FIRST AMENDED COMPLAINT** |
| | ) | |
| *Defendant*. | ) | |

1.      Plaintiff John Rash ("Mr. Rash") brings this action to vindicate his First Amendment right to engage in free speech on the grounds of the Lafayette County Courthouse ("County Courthouse"), a traditional public forum owned by Lafayette County, in Oxford, Mississippi.

2.      Lafayette County ("Defendant" or the "County"), through its Board of Supervisors (the "Board") and Lafayette County Sheriff Joey East (the "Sheriff"), has violated, and continues to violate, the First Amendment to the United States Constitution in two ways: (i) retaliating against Mr. Rash by closing the County Courthouse grounds after dusk and prohibiting Mr. Rash, as well as other members of the public, from using the grounds because it disfavors the content of his speech, and (ii) imposing unreasonable restrictions on use of the County Courthouse grounds for protected speech and assembly.

3.      As an Oxford resident, artist, and documentary filmmaker, Mr. Rash intends to participate in, and to apply for permits to hold, public events and/or gatherings on the County Courthouse grounds, including events and/or gatherings that are to be held after dark.  Mr. Rash has been injured by the County's unconstitutional curfew and permitting policies applicable to

the County Courthouse grounds, and will continue to suffer harm if enforcement of these policies is not declared unconstitutional and enjoined.

4.      Mr. Rash has already been deprived of his First Amendment rights by the County. As part of the Oxford Fringe Festival, an annual art event in Oxford, Mr. Rash helps organize a projection art event called PROJECT(ion), which displays images on the walls of buildings and other surfaces.  Mr. Rash projected images on the walls of the County Courthouse from the County Courthouse grounds as part of the 2019 Oxford Fringe Festival.  On July 14, 2020, Mr. Rash applied for a permit to hold this event on August 8, 2020 as part of the 2020 festival.  On July 20, 2020, the County changed its policy and closed the County Courthouse grounds after dusk, and then denied Mr. Rash's permit on this basis.  As a result, Mr. Rash was unable to hold the PROJECT(ion) event as planned.

5.      On information and belief, the County imposed a curfew on the County Courthouse grounds at least in part to provide a basis for the denial of Mr. Rash's permit application.  This retaliatory denial and closure of a public forum stifles the active discourse relating to the Confederate monument on the County Courthouse grounds and violates the First Amendment to the United States Constitution.

6.      The County's restrictions on use of the County Courthouse grounds constitute an unconstitutional prior restraint on speech and assembly, and unreasonable time, place, and manner restrictions on speech and assembly.  These restrictions are not content neutral, are not narrowly tailored to serve a significant government interest, do not leave open ample alternative channels of communication, and thus are unconstitutional.  Specifically, the County's policies governing public use of the County Courthouse grounds violate the First Amendment in at least the following ways:

2

7.     **The Curfew:**  The County's imposition of a curfew on the County Courthouse grounds from thirty minutes before sundown to dawn is an unreasonable restriction on speech. The imposition of a total dusk-to-dawn curfew is not narrowly tailored to serve the County's interests in public safety.  Moreover, on information and belief, the curfew is arbitrarily enforced against political speech, and is not enforced against members of the public engaged in nonpolitical conduct on the County Courthouse grounds.

8.     **The Five Person Rule:**  The County's recent implementation of a policy requiring a permit for gatherings of more than four persons on County Courthouse grounds is an unconstitutional prior restraint.  Permitting requirements for assemblies and protests are allowed under the First Amendment where necessary for the government to effectively manage traffic, safety, and competing use concerns.  A gathering of five people on the grounds of the County Courthouse creates none of these concerns.  As the Fifth Circuit has held, "ordinances requiring a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest."  *Knowles v. City of Waco, Tex.*, 462 F.3d 430, 436 (5th Cir. 2006).

9.     **The Fourteen-Day Advance Notice Requirement:**  The County's latest iteration of its frequently-changing permitting policy requires fourteen days' advance notice for a permit to be granted.  This is unconstitutionally burdensome.  Permitting applications "must be handled on an expedited basis so that rights of political expression will not be lost in a maze of cumbersome and slow-moving procedures."  *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 163 (1969) (Harlan, J., concurring).  Fourteen days is too long.

10.     **The County's Permitting Process Is Arbitrary And Unclear:**  The County claims that use of the County Courthouse grounds is governed by the County's "Facility Use

Policy." However, the Facility Use Policy, as drafted, appears to govern use of indoor facilities in County-owned buildings, and does not logically apply to outdoor public forums such as the County Courthouse grounds. For example, the Facility Use Policy provides that "[g]roups are generally limited to one reservation per month" and that "[p]ermission to use the building shall be granted for events which are scheduled to begin and end between 8:00 a.m. and 10:00 p.m. Monday – Friday," with "[u]se on weekends or after 10:00 p.m." being primarily limited to "events coordinated and staffed by County employees and/or officials." On information and belief, those rules have not been enforced as to the County Courthouse grounds, and events have been routinely held on the County Courthouse grounds, including during weekends, without regard to whether such events are coordinated and staffed by County personnel. The lack of clarity and arbitrariness of the Facility Use Policy is not consistent with First Amendment principles.

11. **The County's Permitting Process Otherwise Violates The First Amendment**: The Facility Use Policy contains numerous other restrictions and requirements that violate the First Amendment, including onerous insurance and indemnity provisions; prohibitions on any use of amplified sound; a provision under which the County may "deny applications for use if the user has previously violated the rules set forth in this policy or if the use would pose health or safety risks"; and a requirement to pay "[t]he total cost of additional law enforcement protection" as "deemed necessary by the Sheriff." These provisions do not set forth narrowly drawn, reasonable, and definite standards for granting or denying a permit and otherwise impermissibly burden First Amendment rights to speech and assembly on the County Courthouse grounds.

12. **The County Has Sought To Restrict Speech Concerning The Confederate Monument**: The County's recent changes to the permitting process applicable solely to the

County Courthouse grounds—as opposed to other public forums subject to the County's jurisdiction—are evidence of the County's intent to restrict protest activity focused on the Confederate monument on the County Courthouse grounds. At the same time, by voting against its relocation on July 6, 2020, the Board of Supervisors has reaffirmed the County's intent that the Confederate monument remain on the County Courthouse grounds. The County's policies concerning public use of the County Courthouse grounds amount to an unconstitutional content-based restriction on speech. The First Amendment requires the County to ensure that everyone can engage in speech about the Confederate monument on the County Courthouse grounds. There is no adequate alternative forum for speech concerning the Confederate monument, since the Confederate monument is located on the County Courthouse grounds.

13.     Mr. Rash therefore seeks a declaration that the County's recently-enacted curfew and the County's permitting policies for use of the County Courthouse grounds, both facially and as applied, violate the First Amendment to the United States Constitution, an injunction against their enforcement, an award of nominal damages, and such other relief as the Court sees fit.

## JURISDICTION AND VENUE

14.     This action is brought pursuant to the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights jurisdiction).

16.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

17.     Attorneys' fees are authorized under 42 U.S.C. § 1988(b).

18.     Venue lies with this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

19.     Plaintiff JOHN RASH is a resident of Oxford, Lafayette County, Mississippi. He is a documentary filmmaker, photographer, visual artist, and educator. He organizes an annual art event, PROJECT(ion), as part of the Oxford Fringe Festival.  He also regularly participates in and/or documents protests, gatherings, and other events held in and around Oxford, including specifically demonstrations for and against the Confederate monument located on the County Courthouse grounds.  Mr. Rash intends to hold, and to participate in and document, events and gatherings on the County Courthouse grounds in the future, including events similar to PROJECT(ion) that can only be held after dark.

20.     Defendant LAFAYETTE COUNTY, MISSISSIPPI is a political subdivision of the State of Mississippi that can sue and be sued in its own name.  The chief policy making and administrative body of the County is, and at all times relevant hereto has been, the Lafayette County Board of Supervisors.  The Board of Supervisors is comprised of five elected Supervisors, one from each of the five districts in Lafayette County.  The Board of Supervisors carries out a variety of duties, many mandated by state law, including adopting orders, resolutions or ordinances that involve county affairs and appointing the County Administrator. In addition, Joey East, the Sheriff of Lafayette County, Mississippi, is responsible for law enforcement within Lafayette County, and shares authority over regulations that govern use of County facilities, including the grounds of the County Courthouse.[1]  At all relevant times, Lafayette County has acted and continues to act under color of Mississippi State law.

---

[1] Under Mississippi law, sheriffs "are final policymakers with respect to all law enforcement decisions made within their counties."  *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996) (citing *Huddleston v. Shirley*, 787 F. Supp. 109, 112 (N.D. Miss. 1992) and Miss. Code § 19-25-1, *et seq.*).

## FACTUAL ALLEGATIONS

### I.      The County Courthouse Grounds Are A Traditional Public Forum

21.     For nearly sixty years, the United States Supreme Court has recognized that the grounds of government buildings, including courthouses, that are generally accessible and have historically been used for expressive activity are traditional public forums.  *See Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).

22.     The County Courthouse and its grounds constitute an enclave of County property within the City of Oxford.  The surrounding areas of the Oxford town square are subject to City of Oxford, rather than Lafayette County, jurisdiction.

23.     The County Courthouse is a historic courthouse located in the center of Oxford's town square and listed on the National Register of Historic Places.[2]  The courthouse building was constructed in 1872.[3]  The Oxford town square is a center of civic life in the city and County and is surrounded by bars, restaurants and stores.

24.     There is no gate or other barrier to public access to the County Courthouse grounds.  An intermittent low, decorative fence surrounds the County Courthouse grounds, but there are breaks in the fence for prominent steps that lead onto the grounds and also a large entrance onto the grounds.  The town square is often filled with people visiting attractions, and the County Courthouse grounds function as a public park, with grass, benches, trees, and pedestrian pathways.[4]

---

[2] *See* Nat'l Park Serv., Nat'l Register Digital Assets, *available at* https://npgallery.nps.gov/NRHP/AssetDetail/fe064bbe-5ccf-4862-aa9b-a5a595445f82.
[3] *See* http://www.courthouses.co/us-states/m/mississippi/lafayette-county/.
[4] Image via Google Street View.



25.     In 1906 and 1907, the United Daughters of the Confederacy and the United Confederate Veterans erected two Confederate monuments in the County—one on the University of Mississippi campus, and the other at the southern edge of the County Courthouse grounds.[5] The County Courthouse monument bears an inscription, which reads in part: "In memory of the patriotism of the Confederate soldiers of Lafayette County, Mississippi. They gave their lives in a just and holy cause."[6]

26.     As a matter of history and actual use, the County Courthouse grounds are a traditional public forum. In the alternative, the County Courthouse grounds are a designated public forum. For example, a few of the numerous events that have been held at the County Courthouse in recent years include:

- On August 10, 2019, as part of the Fringe Festival, the Oxford Film Festival projected films on the County Courthouse lawn.[7]

---

[5] Andy Belt, THE OXFORD EAGLE, *The Oxford Confederate Statues – The history and creation of two Lafayette County monuments* (Sept. 25, 2017), *available at* https://www.oxfordeagle.com/2017/09/25/statues-history-creation-two-lafayette-county-monuments/.
[6] *See* The American Legion, *Lafayette County Confederate Monument*, https://www.legion.org/memorials/244206/lafayette-county-confederate-monument.
[7] https://www.facebook.com/oxfordfilmfest/photos/a.417664151630/10156157090826631.

8

- On February 23, 2019, a pro-Confederate rally was held on the County Courthouse lawn near the Confederate monument and ended at the Confederate statue on the University of Mississippi's campus.[8]

- On May 2, 2018, an event for the National Day of Prayer was held on the County Courthouse grounds.[9]

- On March 19, 2016, an Easter celebration was held on the County Courthouse grounds.[10]

## II.    Protests After The Death Of George Floyd

27.     After the death of George Floyd in Minneapolis, Minnesota on May 25, 2020, protests erupted across the United States and the world, including in Oxford, Mississippi.

28.     The Confederate monument on the County Courthouse Grounds has attracted significant attention in recent years, with renewed focus being given both nationally and in Mississippi to the historical and political significance of such monuments.[11]  As noted above, in February 2019, pro-Confederate groups and counter-protesters held rallies at the monument.[12] After the killing of George Floyd, the Confederate monument became a focus of political and expressive activity.  Both supporters and opponents of the monument have exercised their rights to free speech, to assemble and to protest.

---

[8] Grace Marion, THE DAILY MISSISSIPPIAN, *Oxford community members react to Confederate protests and counterprotests* (Feb. 23, 2019), *available at* https://thedmarchives.com/oxford-community-members-react-to-confederate-protests-and-counterprotests/.

[9] Alyssa Schnugg, THE OXFORD EAGLE, *National Day of Prayer vigil to be held in Oxford this week* (May 1, 2018), available at https://www.oxfordeagle.com/2018/05/01/national-day-prayer-vigil-begins-wednesday-oxford/.

[10] LaReeca Rucker, THE OXFORD EAGLE, *Spring time on the Square* (Mar. 20, 2016), *available at* https://www.oxfordeagle.com/2016/03/20/spring-time-on-the-square/.

[11] *See, e.g.*, Karen L. Cox, THE WASHINGTON POST, *The whole point of Confederate monuments is to celebrate white supremacy* (Aug. 16, 2017), *available at* https://www.washingtonpost.com/news/posteverything/wp/2017/08/16/the-whole-point-of-confederate-monuments-is-to-celebrate-white-supremacy.

[12] *See* Grace Marion, THE DAILY MISSISSIPPIAN, *Oxford community members react to Confederate protests and counterprotests* (Feb. 23, 2019), *available at* https://thedmarchives.com/oxford-community-members-react-to-confederate-protests-and-counterprotests/.

29.     Since Mr. Floyd's death, protests have occurred weekly, if not daily, in Oxford, including at the Lafayette County Chancery Courthouse, across the street from the County Courthouse, on the grounds of the County Courthouse and next to the Confederate monument, and in the form of a march led by University of Mississippi football players that drew hundreds of marchers.  These protests have been motivated in part by the presence of the Confederate monument on the County Courthouse grounds.

30.     For example, on the night of Saturday, June 20, 2020, for about thirty minutes, two men projected "Take It Down" in vertical letters onto the Confederate monument.  The Oxford Police Department instructed the men to remove the projection, which was being made within Oxford city limits onto the County Courthouse grounds.[13]



---

[13] Hadley Hitson, THE DAILY MISSISSIPPIAN, *Citizens project 'TAKE IT DOWN' onto the Lafayette County Courthouse Confederate monument* (June 21, 2020), *available at* https://thedmonline.com/citizens-project-take-it-down-onto-the-lafayette-county-courthouse-confederate-monument/.

31.     On Saturday, July 4, 2020, a group that supported the Confederate statue held a permitted event on the County Courthouse grounds.  At this event they displayed a Confederate flag in front of the courthouse, above speakers standing on the stairs leading into the building, and stood under the Confederate monument holding flags and signs.[14]



32.     On information and belief, additional gatherings and protests have been held on or around the County Courthouse grounds during July and/or August of 2020, including a candlelight vigil organized by a pro-Confederate organization.

33.     On information and belief, all of these protests have been peaceful.

34.     On June 22, 2020, the Board of Supervisors met to hear from the community regarding relocating the Confederate monument.[15]  On July 6, 2020, the Board voted unanimously against doing so.[16]  Supervisor Chad McLarty noted that "[t]his will be the third

---

[14] Photo by John Rash.

[15] *See* Taylor Vance, DAILY JOURNAL, *Lafayette supervisors hear from residents over Confederate monuments near courthouse* (June 22, 2020), *available at* https://www.djournal.com/news/local/lafayette-supervisors-hear-from-residents-over-confederate-monument-near-courthouse/article_5246ad51-09d6-5858-882f-68dbee9448c7.html.

[16] For the avoidance of doubt, that decision is beyond the scope of—and not challenged in—this lawsuit.

time in eight years" that the Board had been forced to consider the monument.[17]  Supervisor

Larry Gillespie stated he did not believe that protesters were seeking "racial reconciliation"; that

inaction against "violence and distraction" caused by protesters in other cities "was inexcusable";

and that "public safety will always come first for me."[18]  Board President Mike Roberts said that

protesters had failed to exhibit "common sense," and expressed support for law enforcement,

lamenting that "our community and our county [has been] drug into a national movement behind

police brutality."[19]

III.     **The Facility Use Policy And Its Recent County Courthouse-Specific Revisions**

35.     The original version of the Facility Use Policy bears an Effective Date of April

20, 2015 and is attached as **Exhibit 1** (the "2015 Policy").

36.     The 2015 Policy applied to "the use of public areas of buildings or facilities

owned, leased, or otherwise occupied exclusively by Lafayette County Government that are used

for the conduct of County operational business."  "Public area" was defined to "include[] the

grounds and lobbies of County buildings, the Board Room, and Chancery and Circuit

Courtrooms."  It stated that "[g]roups are generally limited to one reservation per month" and

that the "scheduling of reservations should occur no earlier than one (1) year in advance."  It also

stated that "[p]ermission to use the building shall be granted for events which are scheduled to

begin and end between 8:00 a.m. and 10:00 p.m. Monday – Friday.  Use on weekends or after

10:00 p.m. is limited and must primarily be events coordinated and staffed by County employees

and/or officials."  The 2015 Policy further provided, among other things, that permit applications

---

[17] Alyssa Schnugg, *Lafayette County Supervisors Vote to Keep Confederate Statue* (July 6, 2020),
https://hottytoddy.com/2020/07/06/lafayette-county-supervisors-vote-to-keep-confederate-statue/.
[18] Ana Martinez, THE OXFORD EAGLE, *Lafayette County Supervisors vote no on moving Confederate statue* (July 6,
2020), *available at* https://www.oxfordeagle.com/2020/07/06/lafayette-county-supervisors-vote-no-on-moving-
confederate-statue/.
[19] *Id.*

"should be submitted to the County Administrator at least one (1) week in advance of the day needed" and that "[t]he County reserves the right to deny applications for use if the user has previously violated the rules set forth in this policy or if the use would pose health or safety risks."

37.     After a rally on February 23, 2019 held by pro-Confederate groups on the County Courthouse grounds, the Board of Supervisors revised the Facility Use Policy.[20]  The revisions included extending the notice requirement to 30 days and adding a $25, non-refundable fee, plus a $50 per hour fee.  A copy of the order instituting the revised policy is attached as **Exhibit 2**.

38.     On June 15, 2020, the Board of Supervisors amended the Facility Use Policy, solely with respect to use of the County Courthouse grounds.  Specifically, the Board "[a]mend[ed] the Facility Use Policy in order to allow four (4) people or less to use the Historic Courthouse outside grounds, including the area around the Confederate Statue, without a permit, although said individual or group may obtain a permit in order to have exclusive use of the area; five (5) or more people gathering require a permit for use.  A permit application must be submitted at least 30 days prior to the date of proposed use for five or more people, unless unusual circumstances make it impossible to make application prior to the thirty (30) day period; the Board of Supervisors and/or the sheriff shall determine whether to waive the 30 day period."  A copy of the order enacting this amendment is attached as **Exhibit 3**.

39.     On July 20, 2020, the Board of Supervisors further amended the Facility Use Policy, as applied to use of the County Courthouse grounds.  This amendment "require[s] that application [ ] be made at least 14 days prior to date of proposed use and require[s] closure of

---

[20] Alyssa Schnugg, *Lafayette County Supervisors Change 'Facility Use Policy' After Confederate Rally* (Mar. 5, 2019), https://hottytoddy.com/2019/03/05/lafayette-county-supervisors-change-facility-use-police-after-confederate-rally/.

Courthouse grounds, including the confederate statue area, thirty minutes before dusk." A copy of the order enacting this amendment is attached as **Exhibit 4**.

## IV. The County Has Violated, And Continues To Violate, Mr. Rash's First Amendment Rights

### A. The County Violated Mr. Rash's First Amendment Rights By Prohibiting Mr. Rash From Holding The PROJECT(ion) Event On The County Courthouse Grounds On August 8, 2020

40.     For the past three years Mr. Rash has organized PROJECT(ion), a public art event, in Oxford, as part of the Oxford Fringe Festival. In 2018 and 2019, the event included projections of artists' work onto walls and other surfaces. At the 2019 event, one artist projected scenes from the United States border with Mexico, critical of current United States immigration policies, onto the outside walls of the County Courthouse. The organizers of the Fringe Festival obtained a permit for Mr. Rash to use the County Courthouse grounds for this event.

41.     On information and belief, County officials were unhappy that Mr. Rash's event had featured artists whose work involved political expression, including the expression of political viewpoints regarding immigration policy. As a result of this political sensitivity, to avoid involving the Fringe Festival organizers in any controversy, Mr. Rash chose to apply for a permit for use of the County Courthouse grounds for the PROJECT(ion) event for 2020.

42.     On July 7, 2020, Mr. Rash contacted the County Administrator's office via email regarding a permit application. He received no response. Then, on July 14, 2020, Mr. Rash visited the County Administrator's office in the Lafayette County Chancery Court building in person to obtain a permit to hold PROJECT(ion). He inquired about his previous email and was informed that the County Administrator had been out of the office the week prior, and that any application submitted prior to the July 20, 2020 meeting of the Board of Supervisors would be considered.

43.     Mr. Rash filed his application on July 14, 2020.  When filing his application, Mr. Rash was told that if he had four or less people, he would not need a permit.  Because he did not know how many people would ultimately attend the event, he estimated thirty people would attend.

44.     On July 15, 2020, County Administrator Lisa Carwyle contacted Mr. Rash by telephone to inquire about the equipment that would be required for Mr. Rash's event.  Ms. Carwyle also informed Mr. Rash that the Board of Supervisors would consider his permit application at their July 20, 2020 meeting.

45.     On July 16, 2020, a Lafayette County Sheriff's deputy, subsequently identified as Chief Deputy Scott Mills, contacted Mr. Rash by telephone and inquired about the nature of the event for which Mr. Rash had requested a permit.  Specifically, Chief Deputy Mills stated: "Really what I want to know, is there anything that is going to talk about the monument or things that have been going on in Oxford lately."  Mr. Rash responded that the projections would likely concern the Confederate monument, among other topics.  Chief Deputy Mills responded, "If that's the case, I have to get back to you."  Mr. Rash replied, "It doesn't seem appropriate to make this decision based on content."  Chief Deputy Mills responded, "Well we'll just have to see and get back to you."

46.     When the Board of Supervisors met on July 20, 2020, the Board changed the policy regarding use of the County Courthouse grounds to impose a dusk-to-dawn curfew.  The policy change was approved after the Board entered executive session "to discuss security

issues."[21]  There is no publicly-available record as to whether Mr. Rash's permit application was specifically discussed.

47.     On July 23, 2020 Ms. Carwyle emailed Mr. Rash and said, "I've denied the permit due to a change in the County's permit policy.  No permits will be issued after dusk, due to security issues."  Mr. Rash subsequently contacted Ms. Carwyle by telephone and stated that, due to the permit denial, he would hold the event without a permit and ensure there would be four or less people on the lawn, consistent with the Facility Use Policy amendment providing that permits are not required for gatherings of four or fewer persons.  Ms. Carwyle responded by email on July 27, 2020, stating that "the [County] Courthouse grounds, including the statue area, are closed for any gathering after dark, regardless of permit requirements.  So you would not be allowed to be on the grounds from thirty minutes prior to dusk to sunrise."

48.     On information and belief, the County's decision to adopt the curfew policy was motivated, in whole or in part, by an intent to deny Mr. Rash's permit application and prevent Mr. Rash from holding the PROJECT(ion) event, based in whole or in part on the subject-matter or viewpoint of the speech and artistic expression that the County anticipated would be involved. This constitutes retaliatory forum closure and violates the First Amendment.  In addition, the County's permitting policies applicable to the County Courthouse grounds, and the County's closure of the County Courthouse grounds pursuant to the newly-enacted curfew policy, constitute unconstitutional prior restraints and/or unreasonable time, place, and manner restrictions.

---

[21] *See* July 20, 2020 Meeting Minutes, Lafayette County Board of Supervisors, http://www.deltacomputersystems.com/cgi-mbr7/MBMCGI02?HTMCNTY=MS36&HTMBASE=C&HTMKEY=000005909&.

49.     As a result of the County's denial of Mr. Rash's permit application and imposition of the curfew on the County Courthouse grounds, Mr. Rash was unable to hold the PROJECT(ion) event he had planned to hold on August 8, 2020, and was instead forced to make alternative arrangements to hold a substitute event on public property under the jurisdiction of the City of Oxford.

50.     The County's denial of the permit for Mr. Rash's August 8, 2020 PROJECT(ion) event and closure of the County Courthouse grounds is not the only instance of the County improperly preventing Mr. Rash from exercising his First Amendment rights on the County Courthouse grounds.  For example, at the July 4, 2020 protest on the County Courthouse grounds in support of the Confederate monument, mentioned above, Mr. Rash was in attendance to document events.  When Mr. Rash approached the group that had gathered to protest in favor of the Confederate monument, a Lafayette County Sheriff's Deputy told Mr. Rash he had to go to "your side," referring to the counter protestors advocating for the relocation of the Confederate monument.  Even though Mr. Rash was attending the protest in his capacity as a documentarian, he was not allowed into the area in which the pro-Confederate protestors had gathered.

**B.      The County Continues To Violate Mr. Rash's Constitutional Rights By Imposing Unreasonable Restrictions On Speech And Assembly On The County Courthouse Grounds**

51.     The County's imposition of a curfew on the County Courthouse grounds from thirty minutes before sundown to dawn is an unreasonable restriction on speech.  On information and belief, the curfew is arbitrarily enforced against political speech, and is not enforced against members of the public engaged in nonpolitical conduct within the County Courthouse grounds.

52.     Even if the curfew were enforced uniformly, the imposition of a total curfew from thirty minutes before dusk to dawn is not narrowly tailored to serve the County's asserted interests in public safety.  The term "dusk" is vague, and, if construed to mean "sunset," would

mean that the County Courthouse grounds are subject to curfew as early as 4:17 p.m., depending on the time of year.[22] And, the assertion that partially or wholly closing a forum frees up law enforcement resources that might otherwise be used to police the forum does not suffice to justify the imposition of a curfew.

53. The County's implementation of a policy requiring a permit for "five (5) or more people gathering" on County Courthouse grounds is also unconstitutional. Permitting requirements for assemblies and protests are imposed so the government can effectively deal with traffic, safety, and competing use concerns. The presence of five people on County Courthouse grounds creates none of these concerns.

54. Moreover, this permitting policy is unconstitutionally vague insofar as it applies to "gathering[s]" of people. It is unclear from the terms of the policy whether, for example, a family of five visiting the town square would constitute a "gathering" subject to the permitting requirement. It is also unclear from the terms of the policy whether, for example, if four people engaging in political speech in the vicinity of the Confederate monument were approached and engaged in conversation by a fifth person who disagreed with their positions, the assembly would then become an unlawful unpermitted five-person "gathering" subject to dispersal or other enforcement action by the County and its agents. The lack of clarity as to the application of this policy gives the County unlawful discretion to enforce the policy in an arbitrary manner, and/or a manner that amounts to content and/or viewpoint discrimination.

55. The County's latest revision to its permitting policy requires fourteen days' advance notice for a permit to be granted. This waiting period is unconstitutionally burdensome and is not justified by any significant government interest.

---

[22] *See* https://www.timeanddate.com/sun/usa/oxford?month=12&year=2020 (stating that sunset in Oxford in early December 2020 will occur at approximately 4:47 p.m.).

56.     The County's ambiguous reliance on the Facility Use Policy to govern access to the County Courthouse grounds is also improper under the First Amendment.  The Facility Use Policy only logically applies, on its own terms, to use of indoor facilities in County-owned buildings, rather than outdoor, public spaces such as the County Courthouse grounds.  The Facility Use Policy's requirements that (i) "[g]roups are generally limited to one reservation per month"; (ii) "[p]ermission to use the building shall be granted for events which are scheduled to begin and end between 8:00 a.m. and 10:00 p.m. Monday – Friday," and (iii) "[u]se on weekends or after 10:00 p.m." must be "limited" and "must primarily be events coordinated and staffed by County employees and/or officials" are arbitrary and unreasonable restrictions on speech and assembly on the County Courthouse grounds.

57.     The Facility Use Policy contains numerous other restrictions and requirements.  These include onerous insurance and indemnity provisions; prohibitions on any use of amplified sound; a provision under which the County "reserves the right to deny applications for use if the user has previously violated the rules set forth in this policy or if the use would pose health or safety risks"; and a provision which gives the Sheriff sole discretion to "determine whether and to what extent additional Sheriff  Department deputies is reasonably necessary for the event for traffic control and public safety," in which case the permittee must then "pa[y] the total cost of Sheriff Protection . . . in full 10 days prior to the event or the event will be cancelled."

58.     The provisions set forth above grant County officials impermissibly broad discretion in the permitting process and do not establish sufficiently narrowly drawn, reasonable, and definite standards for granting or denying a permit to survive Constitutional scrutiny.  The financial burdens associated with the insurance, indemnity, and "Sheriff Protection" provisions,

19

and the total restriction on the use of amplified sound, also substantially and unreasonably burden First Amendment rights to speech and assembly on the County Courthouse grounds.

59. The provisions set forth above are also impermissibly vague because the Facility Use Policy fails to identify the decision-maker(s) responsible for granting or denying permit applications. Without knowledge of the relevant decision-maker(s), a permit applicant cannot receive the fair notice that the First Amendment requires.

60. The County's recent changes to the permitting process applicable to the County Courthouse grounds—as opposed to other public forums subject to the County's jurisdiction— indicate an intent to restrict protest activity and assembly focused on the Confederate monument. These policies, therefore, constitute an unconstitutional content-based restriction on speech. The County's efforts to deny or substantially restrict the rights of Mr. Rash and of members of the public to protest and to assert their own viewpoints regarding the Confederate monument violate the First Amendment. There is no adequate alternative forum to protest the Confederate monument, because the Confederate monument is located on the County Courthouse grounds.

## CLAIM FOR RELIEF

**Violations of the First Amendment of the United States Constitution applicable to the States through the Fourteenth Amendment pursuant to 42 U.S.C. § 1983**

61. Plaintiff incorporates by reference and realleges paragraphs 1 through 60 as if set forth in full herein.

62. Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the rights to free expression and assembly protected under the First and Fourteenth Amendments to the United States Constitution. In the following paragraphs, references to the First Amendment include the First Amendment as applied to the States through the Fourteenth Amendment.

63.     Defendant Lafayette County, through the Board of Supervisors, the Sheriff, and persons acting under their direction, supervision, and delegated authority, regulates use of Lafayette County property, including use of traditional public forums for protected speech activity.  At all relevant times, Lafayette County has acted and continues to act under color of Mississippi State law.

64.     Plaintiff John Rash applied for a permit to engage in protected speech on public issues – including the political significance and implications of Confederate monuments – in a public forum, namely, the grounds of the Lafayette County Courthouse, which prominently feature a Confederate monument that is the subject of substantial public interest and debate.

65.     In response to Mr. Rash's permit application, Defendant changed the policy governing use of the County Courthouse grounds, closing the grounds entirely between thirty minutes before dusk until dawn.  This action would chill the speech of others who want to engage in similar expression.  Defendant took this action at least in part because it disagreed with the content of Mr. Rash's speech.  Defendant has retaliated against Mr. Rash because of the content of his speech and thus has violated the First Amendment to the United States Constitution.

66.     Defendant's curfew and permitting policies, both facially and as applied, amount to unconstitutional prior restraints on First Amendment rights to free speech and assembly and violate the First Amendment's prohibition against unreasonable and content-based time, place, and manner restrictions of speech in a traditional public forum or, in the alternative, in a designated public forum.  Defendant's curfew and permitting policies are not narrowly tailored to achieve a significant government interest and do not leave open ample alternative channels of

communication. Defendant's curfew and permitting policies therefore violate Mr. Rash's rights under the First Amendment to the United States Constitution.

67.     As an Oxford resident, artist, and documentary filmmaker, Mr. Rash intends to hold public events or gatherings on the County Courthouse grounds, including events to be held during times subject to the County's curfew, and to attend such events either as a participant or as a documentarian in the future. Mr. Rash will therefore continue to suffer harm if enforcement of the County's curfew and permitting policies is not enjoined and declared unconstitutional.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court:

68.     Permanently enjoin Defendant's policies and practices that restrict speech and assembly on the County Courthouse grounds;

69.     Enter a declaratory judgment stating that Defendant's policies and practices that restrict speech and assembly on the County Courthouse grounds violate Plaintiff's rights to free speech and assembly under the First Amendment to the United States Constitution;

70.     Enter a declaratory judgment stating that Defendant's actions in closing the County Courthouse grounds and prohibiting Plaintiff from holding the PROJECT(ion) event on August 8, 2020 violated Plaintiff's rights to free speech and assembly under the First Amendment to the United States Constitution;

71.     Award Plaintiff nominal damages in the amount of $100.00 to compensate Plaintiff for Defendant's violation of Plaintiff's constitutional rights in closing the County Courthouse grounds and prohibiting Plaintiff from holding the PROJECT(ion) event on August 8, 2020;

72.     Award Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

73.     Grant such other relief as the Court deems just and proper.


Dated: August 19, 2020                    Respectfully submitted,


                                          ___/s/: Joshua Tom_____
                                             Joshua Tom

ATTORNEYS FOR PLAINTIFF:

SIMPSON THACHER & BARTLETT LLP            AMERICAN CIVIL LIBERTIES UNION OF
Jonathan K. Youngwood*                    MISSISSIPPI FOUNDATION, INC.
Isaac Rethy*                              Joshua Tom, MS Bar No. 105392
425 Lexington Avenue                      Landon Thames, MS Bar No. 105127
New York, NY 10017                        P.O. Box 2242
Phone: (212) 455-2000                     Jackson, MS 39225
jyoungwood@stblaw.com                     Phone: (601) 354-3408
irethy@stblaw.com                         jtom@aclu-ms.org
                                          lthames@aclu-ms.org
*pro hac vice


C. Jackson Williams, MS Bar No. 7226
P.O. Box 69
Taylor, MS 38673
Phone: (662) 701-9447
cjxn@mac.com

## <u>CERTIFICATE OF SERVICE</u>

I, Joshua Tom, hereby certify that on August 19, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

<u>/s/: Joshua Tom</u>

Joshua Tom