# EXHIBIT 52

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**JOHN RASH**                                                    **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO.:  3:20-CV-224-NBB-RP**

**LAFAYETTE COUNTY, MISSISSIPPI**                               **DEFENDANT**

---

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

---

COMES NOW, Lafayette County, Mississippi, the Defendant in the above-styled and numbered cause, by and through counsel, and serves its Responses to the Plaintiff's First Set of Interrogatories, as follows:

**RESPONSE TO INTERROGATORIES**

1.     Identify all Permitting Policies applicable to public gatherings, parades, protests, or similar events on public property (including but not limited to streets, sidewalks, and parks) subject to County jurisdiction, including public property not covered by the Facility Use Policy.

**RESPONSE**: The Lafayette County policies which concern the use of County-owned facilities do not control or condition the use of streets within the City of Oxford which has its own set of policies which address the use of its streets for parades, protests, demonstrations, festivals and other non-vehicular traffic uses. The Lafayette County policies which do address and limit the public's use of County owned facilities, including the Circuit and Chancery Courthouses, surrounding grounds, as well as the Multi-Purpose Arena, have

been produced by the Defendant in its Responses to Plaintiff's document requests, except the policy applicable to the Multi-Purpose Facility, which is attached hereto as Exhibit "A.".

2.      Identify any Permitting Policy that governed public use of the County Courthouse Grounds prior to the enactment of the Facility Use Policy in 2015.

**RESPONSE**: Prior to 2015, Lafayette County adhered to an unwritten policy which allowed for the use of the anterior spaces within County-owned facilities as long as such use did not interfere with official activities. Over time, demand for the use of County owned facilities increased, including the grounds surrounding the Circuit Courthouse given its central location within the Town Square (including proposed uses which were unanticipated) which necessitated the adoption of written policies with reasonable time, place and manner restrictions in order to minimize interference with official activities and maximize equal access.

3.      Identify all persons involved in the decision to enact the Facility Use Policy in 2015, the drafting thereof, the decision to enact any amendments thereto, the drafting of such amendments, and their respective titles and roles.

**RESPONSE**: The members of the Lafayette County Board of Supervisors, being Jeff Busby, Mike Pickens, Robert Blackmon, Chad McLarty, Mike Roberts, County Administrator Joseph Johnson, Sheriff "Buddy" East and the attorney for the Board of Supervisors, David O'Donnell. The Board of Supervisors adopted the Facility Use Policy. The role of the attorney and County Administrator involved the drafting and related evaluations of all aspects of the policy. The precise roles of the attorney and County Administrator involve matters which are protected from disclosure as attorney-client communications.

4. Identify and describe the factors the County considers to be health and safety risks justifying denial of a Permit, the process by which the County evaluates those factors when considering an application for a Permit, and the County officials involved.

**RESPONSE**: The Defendant is not aware that it has denied a permit to use a County owned facility based on "health and safety risks."

5. List all Permit applications since January 1, 2018, whether under the Facility Use Policy or any other Permitting Policy, and whether the Permit was granted or denied. If a Permit was denied, identify the basis for the denial.

**RESPONSE**: This information, in the form of all permit applications, has been produced by the Defendant in its responses to plaintiff's requests for documents.

6. Describe the process by which the Sheriff "determine[s] whether and to what extent additional Sheriff Department deputies is reasonably necessary for the event for traffic control and public safety," under the Facility Use Policy that requires permittees to pay "[t]he total cost of additional law enforcement protection" and how the Sheriff calculates such cost.

**RESPONSE**: Given that each permit application and proposed use are unique in terms of the potential health and safety risks/needs of the proposed user, the public, and County employees, the Sheriff, as it concerns the use of the Circuit Courthouse facility of which the Sheriff is statutorily charged with the duty to maintain its security, evaluates the proposed use to determine whether existing shift personnel and standard crowd control measures are adequate or whether additional personnel, equipment or other unique measures are required. In making this determination, the Sheriff confers with the City of Oxford and University of Mississippi Police Departments to coordinate the use of personnel and equipment. In the event a proposed use will require additional "non-shift" personnel to be

3

assigned, resulting in additional cost to the taxpayers, that cost is calculated and communicated to the user.

     7.     Identify and describe the reasons for the Board of Supervisors' decision to revise the Facility Use Policy effective as of March 4, 2019.

     **RESPONSE:** The increasingly large size, frequency and the unique nature of the proposed uses of County owned facilities suggested that the 2015 policy should be reviewed and adjusted accordingly.

     8.     Identify and describe the reasons for the Board of Supervisors' decisions to revise the Permit application deadline to 30 days on March 4, 2019 and to 14 days on July 20, 2020.

     **RESPONSE**: The policy's permit application deadlines were adjusted to account for the time reasonably needed to evaluate and plan for the use of County resources in light of the County's experience. Beyond that explanation, the defendant objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege.

     9.     Identify and describe the reasons for the Board of Supervisors' decision to revise the Facility Use Policy to require a Permit for "five (5) or more people gathering" on County Courthouse Grounds effective as of June 15, 2020, and explain what constitutes a "gathering" under this Policy. To the extent you contend that a Permit was required for gatherings of less than five people prior to this Policy change, explain the basis for that contention.

     **RESPONSE**: The defendant objects to this interrogatory to the extent it (1) involves more than one subject matter and (2) seeks information protected from disclosure by the attorney-client privilege. Without waiving said objections, the Defendant would state that, given the size and layout of the Circuit Courthouse grounds, it was concerned that groups of five or more individuals congregating within the grounds would impede pedestrian

4

access to the courthouse and would pose pedestrian safety risks. However, no permit is required as long as larger groups actively used the sidewalks located on the perimeter of the courthouse grounds by walking or moving and, in doing so, not interfering with the public's right to use the sidewalks.

10. Identify and describe the reasons for the Board of Supervisors' decision to adopt the Curfew Order on July 20, 2020. To the extent you contend that the Board of Supervisors adopted the Curfew Order because of public safety and/or traffic safety concerns, identify and describe any relevant public safety and/or traffic safety incidents or issues predating the enactment of the Curfew Order.

**RESPONSE**: The Lafayette County Board of Supervisors relied on the advice of Sheriff Joey East who, as the Sheriff and former City of Oxford Chief of Police, advised that the evening use of the Circuit Courthouse grounds posed an undue pedestrian and traffic safety issue given the confines of the Courthouse Square and the centrality of its location in a busy commercial area. Sheriff East also advised that the evening use of the courthouse grounds placed an unreasonable strain on Department resources due to limited staffing of the evening shifts.

11. Identify each instance since January 1, 2018 in which the County determined that any person had held an unpermitted gathering or event on the County Courthouse Grounds, was unlawfully present on the County Courthouse Grounds, or otherwise violated the Facility Use Policy, including but not limited to the Curfew Order, with respect to the County Courthouse Grounds, and describe the action taken by the County in response, including any penalties enforced.

**RESPONSE**: The Defendant is aware that, on occasion, groups have used the Circuit Courthouse grounds without a permit. On these occasions, the groups were informed by the Sheriffs Department of the permit requirement and complied. These incidents were not documented.

12. Identify all persons who reviewed Plaintiff John Rash's Permit application, and describe each such person's role in the process.

**RESPONSE**: The County Administrator, Lisa Carwyle, reviewed the permit application and requested routine review by the Sheriffs Department (Chief Deputy Scott Mills). Ms. Carwyle determined that the proposed evening use of the Circuit Courthouse grounds was not allowed under the County Facility Use Policy. Ms. Carwyle communicated the decision to the plaintiff.

## VERIFICATION

I, Lisa Carwyle, in my capacity as the County Administrator of Lafayette County, Mississippi, hereby state under oath that I have reviewed the foregoing Responses to Plaintiff's First Set of Interrogatories and that these responses are true and correct to the best of my knowledge, information and belief as of the date of these responses. I reserve the right to amend or correct my responses in the event additional information in the form of memory, third party information or other sources of information suggest that I do so.

Lisa Carwyle

NOTARY

My Commission Expires:

_____

(Seal)

6

THIS, the 20th day of October, 2020.

Respectfully submitted,

CLAYTON O'DONNELL PLLC
1403 VAN BUREN AVENUE, SUITE 103
P.O. Drawer 676
Oxford, MS 38655
Telephone: (662) 234-0900


/s/ David D. O'Donnell
**DAVID D. O'DONNELL, MSB #3912**
*Attorney for Lafayette County, Ms.,*
*Defendant*
dodonnell@claytonodonnell.com


## CERTIFICATE OF SERVICE

I, David D. O'Donnell, hereby certify that I electronically served the foregoing to all counsel of record.

This the 20th day of October, 2020.

*/s/ David D. O'Donnell*
**DAVID D. O'DONNELL, MSB# 3912**
dodonnell@claytonodonnell.com

7



# Lafayette County Multi-Purpose Facility Use Policy

1.0 **Policy Statement.** This policy is established to assure that certain facilities owned and operated by Lafayette County are utilized in a manner that has a public purpose that meets the needs and interests of the community, as well as to set. clear policies, procedures, regulations and fees regarding such uses. This policy supersedes all other County policies regarding the use of County facilities as defined in this policy. No Lafayette County public facility, regardless of its primary purpose, is exclusively reserved for use by a single interest group, organization or population group. Permission by the County to use its facilities does not constitute an endorsement by the Lafayette County Board of Supervisors.

2.0 **Definitions..** For purposes of this policy, the following definitions shall apply to the terns used herein:

2.1 Affiliate. A board or committee having at least one (1) member appointed by the Board of Supervisors; or a group consisting primarily of Lafayette County residents having a Public Purpose.

2.2 Building. Enclosed climate controlled structure that may be divided into areas for various uses, which is owned, leased or operated by the County.

2.3 County Department. An operational unit within County government whose primary source of funding is from the. County and who. is supervised by the County Administrator, an elected County official, an appointed County Official, or a group recognized by the County and whose sole purpose is to provide support and/or resources to a County Department

2.4 Grounds. Areas outside County buildings including lawns, courtyards, and plazas owned and/or operated by the County.

2.5 Nonaffiliated Group. Any public purpose group not meeting the definition of Affiliate or small group.

2.6 Public Purpose. An activity in which the action or direction concerns, affects, or is of benefit to Lafayette County and the Lafayette County community as determined by the Board of

A

Supervisors..

2.7 <u>Signs</u>. Any words, lettering, parts of letters, figures, numerals phrases sentences, emblems, devices, structures, designs, trade name, or trademarks. by which anything is made known such as are used to designate an individual, a firm, an association, a corporation, a profession, a business, or a commodity or products; which are visible from street or property and used to attract attention. For the purpose of this policy postings that are attached to grounds or buildings for the use of displays including telecasts of information with a public purpose to facilities that are owned .and operated by Lafayette County.

2,8 <u>Small Group</u>. Volunteer groups, nonprofit organizations or associations of twenty (20) or less people in which the majority of the members are either residents or people who work in Lafayette County. A small group does not include a for-profit commercial or business group.

2.9 <u>Facility Manager</u> and <u>Facility Management</u> is the Yoknapatawpha Arts Council, Inc.

2.10 <u>Facility Coordinator</u> is the designated employee of Lafayette County who has been assigned the day-to-day oversight of the Facilities and acts under the immediate supervision of the County Administrator..

## 3.0   In General.

Except where noted in this Facility Use Policy, County Buildings and Grounds are limited to Public Purpose Activities. However, subject to space availability and the priority schedule set forth in Section 4.2, facilities will be made available on a limited basis for private social functions, such as weddings, birthday or anniversary parties. Large meeting rooms are not available for individual use. Meeting rooms are not to be used as a headquarters for any company, club or organization.

3.1 <u>Commercial or Business Use Prohibited.</u> For-profit commercial or business activities are specifically prohibited, except where there is a public purpose as may be authorized by the County Administrator or his/ her designee.

## 4.0   Covered Buildings and Grounds.

Certain Buildings and Grounds (collectively referred to as "Facilities") owned or operated by Lafayette County are covered by this Policy and are listed in Attachment 1 "County Facilities Covered by Policy."

4.1 The available County Facilities covered by this Policy, may be amended from time to time by the County Administrator or designee, and shall contain the list of Facilities by name and address owned or operated by the County, the approved use of the Facility, the hours of permitted use and the availability of reservations and any particular rules or guidelines for that particular Facility.

4,2 Priority of Use. In an effort to ensure Facilities are utilized in the manner and intent for which they were originally established and to ensure Facilities are available to serve the needs of the general public as a whole while at the same time providing for use by other parties, a priority use for scheduling conflicts shall be determined as follows:

**Priority 1**: Lafayette County sponsored programs and activities; or a board or committee having at least one member appointed by the Board of Supervisors

**Priority 2**: County Extension programs

**Priority 3**: A group consisting primarily of Lafayette County residents meeting for a public purpose

**Priority 4**: Nonaffiliated Group or any public purpose group not meeting the definition of Affiliate, including programs and events which are designed to promote the arts, education and similar purposes

**Priority 5**: Commercial and for-profit events and programs which have a public purpose.

**Priority 6**: Private social functions

**5.0    Rules for Usage of Facilities.**

5.1 The following shall be prohibited within or on the premises of all County Facilities available for use under this Policy:

5. L1 Selling, offering for sale, soliciting or promoting the sale of any goods or services on County premises is prohibited, except in association with approved events held by the County; or  by special written permission of the County Administrator or designee. Exceptions are allowed  for groups associated with various County departments as provided in section 2.3, whose fundraising activities are for the direct support of a County Department or approved cause or charity

5.1.2 All facilities associated with this policy are Tobacco Free. Tobacco use, including smoking, chewing or the use of e-cigarettes on County grounds and associated parking areas is prohibited.

5.1.3 Alcoholic beverages, except as authorized by the County Administrator for special events (beer and wine only), in which case host liability insurance shall be required.

5.1.4 All illegal drugs and any other illegal substances.

5.1.5 Illegal Gambling.

5.1.6 Weapons of any kind except by civil and military law enforcement officers in the execution of their duties (including off duty officers as may be necessary to comply with this. Policy).

5.1.7 Animals of any kind except service animals or those associated with a County sponsored program.

5.1.8 The use of profanity, offensive language and profane gestures, fighting or other assaultive behavior.

5.1.9 Skate boarding is prohibited on County property, grounds, rails, or parking lots unless it is a County sponsored program in a parking lot owned and/or operated by the County.

5.2 **Facility Clean-Up.** Users shall be responsible for all Facility clean-up, which includes but is not limited to, collection and removal of trash and recyclables during and at the conclusion of the Event and leaving it in an area designated for pick-up.

5.2.1  A cleanup fee will be assessed and taken out of the security deposit as provided in subsection 8.3 for Users that do not adequately clean up after their Event.

5.2.2  Consistent with State law and County policy, recyclables used during an Event held in

County Facilities must be separated. and placed in designated containers.

5.2.3 Waste receptacles will be made available to Users. Only trash generated as part of the Event may be deposited in County trash receptacles, all other trash is prohibited.

5.3 In making County Facilities available for use under this Policy to individuals or groups, the. County assumes no obligation or responsibility for the activities of the individuals or groups; nor makes any direct or indirect endorsement of the activity.

## 6      Special Requirements

6.1 Kitchen Use. Kitchens, where provided, are for food warming and serving only. Preparation and cooking of meals is prohibited unless special permission is granted by Facility Management.

6.2 Equipment Use. Unless otherwise arranged with the County, each User shall be responsible for providing any equipment necessary for the planned Event, including, but not limited to audio/visual and other technology.

6.2.1      If County equipment is available for use, qualified County staff must be present to operate the equipment. There may be a fee for use of the equipment and staff to operate the equipment.

6.2.1.1 Users shall be responsible for returning the set up to the "standard room set up" as posted in each Facility. Only tables and chairs assigned to each Facility are available for use by the User.

6.2.1.2 Public address systems proposed for use by a User shall not disrupt surrounding County or business operations or disrupt neighbors in any way.

6.3 Grounds Use. Anchoring tents, canopies or other allowed structures must be accomplished with sandbags or in another noninvasive manner. This includes temporary structures that may be erected in parking lots as part of an approved Event. User must have County Fire Marshal inspection for tents.

6.3.1 Outdoor Power connections are available at some Facilities; utility fees may be assessed for use. UL rated connections can only be made to these appliances.

6.4 Parking. Users and their invitees may only park in designated areas assigned to the Facility or the Event. Users are responsible for complying with any onsite parking regulations. Parking restrictions at Facilities are strictly enforced. Any violators may be towed at the owner's expense.

6.4.1 Large Events may be required to utilize off site parking. The User shall assume all costs and responsibility for transportation to the Facility.

6.5 Signage. Banners or signs may be posted on specified grounds as provided below. Banners and signs must be removed at the conclusion of the Event.

6.6.1 Other than County sponsored Events, any and all advertisement for private purposes in the

form of flyers, posters, signs, placards, stickers, etc for the event shall contain substantially the following statement:

> "The views and beliefs of this event do not necessarily reflect those of Lafayette County Government. This is not a Lafayette County sponsored event, Lafayette County has no involvement in coordinating or presenting this Event. If you require further information regarding a particular event, please refer to the appropriate contact or website information provided."

6.6.2 Temporary signs of an informational or directional nature may be erected on site in an approved location, during the day of the Event.

6.6.3 No political campaign signs promoting candidates running for office are to be posted at any County Facility, unless otherwise permitted by law.

6.6.4 No posters, banners or other material may be attached to trees, on grounds or to any portion of a Facility, inside or outside in a manner that would cause damage.

## 7.0 Facility Operation Procedures.

County Departments, with the approval of the County Administrator, may establish additional procedures regarding the use of the Facilities and equipment that are within their control and available under this Policy. Such additional procedures shall be incorporated into the list of County Facilities Covered by Policy" Attachment 1.

## 8.0 Fees and Deposits.

Facility Use Fees will include costs for janitorial and utilities except as otherwise noted on the schedule of fees (Attachment 2). Security fees may be required through County or contractual resources.

8.1 Fee schedules are updated annually and will be posted on the County's website or at the particular Facility website if applicable.

8.1.1 Fees shall apply for Facility use both during and after business hours where applicable.

8.1.2 Fees must be paid in full at least ten (10) days in advance of the approved Event. If any checks are returned for insufficient funds, the Event shall be cancelled unless the User pays the fee in cash, certified cashier check or money order plus any returned check fees prior to the date of the Event. Reservations made with less than 10 days advance notice must be paid by cash or certified check, money order properly authorized on the date of reservation.

8.1.3 Depending on the activity type and time of use, the User may be responsible for hiring and paying for security services;. emergency services personnel, or onsite personnel required as a condition of scheduling the Event. Use of the Courthouse, will require a deputy sheriff for which a fee may be required.

8.1.4 Organizations using facilities after hours at no cost will be assessed a janitorial

/security/ambassador fee associated with the specific Facility.

8.2 Deposits. A Deposit may be required for use of and damage to the Facility as provided in the fee schedule, as may be amended from time to time.

8,2.2 Deposits are payable by check, certified check, money order or credit card where applicable when the reservation is made.

8.2.3 Deposit Refunds. Deposits will be refunded within thirty (30) calendar days following the Event. Deposits are refunded in full, less any fees or damage replacement costs as provided in subsection 8.3 of this Policy.

8.3 Damages. Users are responsible for any loss or damage except for normal wear and tear including, but not limited to: furnishings and equipment, damage to walls, doors, floors, ceilings, marker boards or other meeting room amenities, and shall bear the full replacement cost for such loss or damage.

8.3.1 Unless otherwise directed the facility must be placed back in the condition it was prior lo use by the user.

8.3.2 Any replacement costs for loss or damages will be assessed to the User, or will be deducted from Deposits that may be on account with the County prior to returning any to the User.

8.3.3 Any cleanup fees will be assessed to the User, or will be deducted from the deposits that may be on account with the County.

## 9.0 Use Conditions.

9.1 Safety. Individuals or groups must take all necessary precautions to ensure the safety and well- being of all event participants.

9.2 Indemnity. Users agree to indemnify and hold harmless the County for all injuries or damages occurring to persons or property in conjunction with the use of County Facilities. Event participants and users shall execute any waivers of liability as deemed necessary by Facility Management.

9.3 Insurance. Users must provide a Certificate of Insurance showing liability insurance coverage at limits satisfactory to the County Administrator.

9.4 Compliance with Fire Code. The number of individuals attending functions in County Facilities shall not exceed the limits established by the County Fire Coordinator.

9.5 <u>Compliance with Laws</u>. Users are responsible for compliance with all ordinances and laws related to the proposed use of County Facilities, and must obtain all necessary permits for the proposed Event. Users are required to provide copies of required permits prior to date of Event to the appropriate County representative noted in Attachment 1.

9.6 <u>Reservation of Rights.</u> The County Administrator, Facility Manager or its designee, reserves the right to prohibit the use of County facilities to any individual, group or organization in his/her discretion. Reasons for prohibiting use include, but are not limited to, prior improper use of County Facilities, failure to abide by the provisions of this policy and failure to compensate the County for use and/or damages to a facility.

9.7 <u>Waiver of Terms</u>. The County Administrator or his/her designee may waive or vary any provision in this Policy when doing so would more effectively serve the public's interest.

9.8 <u>Supersedes all other Policies.</u> Upon adoption, this Policy supersedes all other policies currently governing use of County Facilities as defined herein.

## 10.0 Reservation, Refunds and Cancellation Procedures

10.1 <u>Reservations. The</u> following uniform procedures shall be complied with in order to reserve a Facility:

10.1.1 User must complete an Application for Facility Use Attachment 3 for all reservations.

I 0.1.2. A Notice of Reservation Approval/Disapproval will be provided to the requestor within five (5) business days following receipt of the completed Application. An approved Application will serve as the proof of reservation and should be retained and made available during the meeting/event should questions about the reservation arise.

10.I .3. Reservations are accepted no earlier than 90 days prior to the requested date of use, except with the written authorization of the Facility Manager or designee.

10.1.4. No User or group may reserve facilities continuously so as to preclude the use of the Facility by any other group or organization.

IO.1.5. Parents or legal guardians must reserve the Facility for anyone under18 years of age and must assure adequate adult supervision of youth groups using any Facility. This may require the user paying for security officers to monitor activities both in and outside of the County facility being used.

I 0.1.6. Facility Reservations extending past operating hours will be subject to an hourly fee for onsite personnel, security and utilities as provided in Section 8.0 of this Policy.

10.1.7 Once approved, the User will be provided a Use Agreement which must be fully executed prior to the Event.

10.2 <u>Refunds:</u> In the event of inclement weather, refunds will be issued for indoor Facilities only if the County Manager closes that Facility. Should a County Facility be closed due to inclement weather or other unforeseen circumstances, User will be given the option to

reschedule, before being refunded all reservation/damage deposits and usage fees incurred.

10.3 <u>Insufficient Funds:</u> Lafayette County will charge a $35 fee for checks returned for insufficient funds, the event will not be booked until funds are received by certified check or money order.

10.4 Requests for use of County Facilities should be directed to the Facility Management.

## 11.0 **Cancellations**

11.1 Lafayette County reserves the right to cancel any reservation. Prior to cancelling an event, Lafayette County reserves the right to move the event to another substantial similar County facility. If a substantially similar location is unavailable all reservation/damage deposits and usage foes will be returned in full. Lafayette County will endeavor to provide at least 48 hours' notice of any cancellation, however, a cancellation notice will be issued as far in advance as possible.

11.2 Users who fail to appear or who cancel a reservation will not be entitled to a refund.

# Attachment 1

## Multi-Purpose Arena Facilities Description

- Indoor Arena and Adjacent Parking
- Arena Conference and Meeting Rooms
- Arena Outdoor Practice Facility
- Amphitheater and surrounding grounds
- Recreational Vehicle Lot

# Attachment 2

# Multi-Purpose Arena Fee Schedule
# [ADD]

# Attachment 3

# Multi-Purpose Arena Use Application

Contact Name:

Organization:                                                   Phone:

Current address:

City:                              State:

Fax:                               Email:

EVENT DAY CONTACT PERSON: (Only if different from above) Name:                    Mobile:

Type of Organization:     □ Affiliate  □ Non Profit     □Lafayette County/Oxford Schools

□Government Agency        Other: Describe _____

Type of Event/ Event Name:

Description of Event: (Please describe your event in detail)

Is this event open to the Public?   □No         □Yes

Has this event been produced before?

☐No    ☐Yes

Is this an annual event?

☐No    ☐Yes

## Event Schedule

|  | Start Day/Date: | End Day/Date | Start Time | End Time |
|---|---|---|---|---|
| Event Date |  |  |  |  |
| Est. No. Participants |  |  |  |  |
| Take Down Dates/Time |  |  |  |  |
| No. Staff/Volunteers |  |  |  |  |

## REQUIREMENTS FOR RENTAL

**Insurance:** The User shall be required, at its sole cost and to secure and maintain continuously a policy or policies of insurance during the term of the Contract. The policy minimum limits of liability for bodily injury and property damage shall be $1,000,000 each occurrence.

**Security:(insert** based on location)

**Payment:** A deposit of $_____ , Cash, Money Order or Certified Check.

I understand that I am responsible to ensure payment of any rental fee (as agreed upon) and related costs. I also understand that this application may be denied for any reason, and if accepted will be bound to the terms and conditions of the Facility Use Contract. All information is accurate and truthful.

| Applicant Signature: | Date: |
|---|---|
|  |  |

Submit Form to:

Yoknapatawpha Arts Council

c/o Arena Facility Manager



# LEASE AGREEMENT

DATE: [ _ _ _ ]

**ORGANIZATION/CUSTOMER NAME:**
**CONTACT;**
**PHONE# :**
**ADDRESS:**

THIS AGREEMENT, made and entered into and between the Yoknapatawpha Arts Council ("YAC" or "Facility Manager") hereinafter Lessor, acting by and through its Director ("Facility Director"), and the above named party, hereinafter Lessee, hereby covenant and agree to abide by the following provisions:

1.     **EVENT DESCRIPTION**. Upon the terms and conditions contained herein and in consideration of the covenants and agreements expressed herein and of the faithful performance by the Lessee of all such covenants and agreements, the Lessor docs hereby grant unto the Lessee the right to use and occupy the Lafayette County Multi-Purpose Facility for the purpose of:

                            **[ Party Name]**

EVENT     START     DATE:     [Event.Date]
EVENT#: [Event#]

2.     **RESERVATION, DEPOSIT, EVENT FEES, PAYMENT and REFUNDABLE DAMAGE DEPOSIT**. Subject to the scheduling priority rules and policies adopted by the Lafayette County Board of Supervisors and set out in the Multi-Purpose Facility Management Agreement between the YAC and Lafayette County, Mississippi, the Lessor shall schedule all events on a first-come, first served basis. The Lessor shall tentatively schedule any requested event and shall notify the Lessee if another party requests such date before a reservation is confirmed. Upon signed return of this contract and a deposit of [$$$] a reservation will be considered confirmed. All events booked less than thirty (30) days before the first date of the event shall not require a deposit, but rather full payment of estimated fees and this payment will not be refunded if the event is canceled. Event fees shall consist of any space rental and any other fees as itemized on the Confirmation Sheet that arise from additional items or services required or requested. Full payment of all fees must be received no later than fourteen (14) days prior to the first date of the event. All credit card payments will incur a 2.35% processing fee with $1.00 minimum fee.

3.     **CANCELLATION and REFUND**. Cancellations and/or changes made to the contract must be

submitted in writing to the Facility Manager's office. No verbal changes will be valid. If an event should be canceled by the Lessee, no refund shall be made unless the rented area is rented to a subsequent Lessee for the same date and time and for a fee equal to or greater than the fees due under this Agreement.

4.    **LIABILITY INSURANCE**. If, in the determination of the Facility Manager, liability insurance is required, a policy satisfactory to the Facility Manager shall be a prerequisite to use of the leased premises. A copy of this policy shall be provided to the Facility Manager no less than one month before the first day of the event. For events scheduled less than one month before the first day of the event, proof of insurance shall be a prerequisite to the taking of a reservation· The policy shall in no case be for an amount less than $1,000,000 and shall provide the Facility Manager and Lafayette County, Mississippi as additional insureds or co-insureds parties.

5.    **ALCOHOL** The Lafayette County Multi-Purpose Facility is a County owned facility located within the municipal boundaries of the City of Oxford and, as such, follows City of Oxford ordinances with regard to the sale and consumption of alcoholic beverages. Accordingly, the Facility Director, at its discretion, may allow the sale and consumption of alcoholic beverages during an event, provided the lessee hires a Licensed Caterer which is duly permitted by the City of Oxford to serve and otherwise provide alcoholic beverages during said event within the provisions of Miss. Code Ann. 67-1-81 and 67-3-53..

Hours of consumption shall generally coincide with the applicable City of Oxford ordinances and ABC regulations, unless the Facility Manager determines to shorten the duration depending on the nature of the event.

To serve or sell liquor, beer and/or light wine, on the Facility premises, you must use our exclusive alcohol caterer [_____].

Lessee may host a bar or elect to do a "cash bar".

Hosted Bar - Lessee is responsible for setup fee and cost of drinks.
Cash Bar – Lessee is responsible for setup foe and guest pay for their own drinks at the time of service.

Required bartender service will be determined by Facility Manager based on the projected attendance and the type of event to ensure quality service and safety for all clients and guests.

6.    **SECURITY**. At the Facility Manager's discretion, security may be hired for your event and the charges will be added to your bill. Required security by Oxford Police Department, the Lafayette County Sheriff's Department or approved security vendor of Lessor's choice,

7.    **CATERING POLICIES**.

All food and beverage must be booked through the Facility Manager and provided by one of our exclusive caterers. All food and beverage must be billed through the Facility Manager.

Please note: If outside food or beverage is brought into the facility without prior written approval, the Facility Manager reserves the right to end any event due to a breach of contract of the catering policy.

All menus must be finalized at least 14 days prior to your scheduled event date and a final head count given no less than 3 days prior to your event

**All catering includes a 15¾ Maintenance Fee.**                    __ __ __ __ __ __Initial

Candy, cakes and confections are allowed from outside caterers with prior approval.

8. **OTHER CONDITIONS**. The Lessee further covenants and agrees to abide by all rules, regulations, rates, policies, conditions, and limitations or the Lessor separately provided to the Lessee.

9. **UTILITIES/DISRUPTION OF PREMISES**. The Lessor shall furnish, at its expense, heat, water, lights and air conditioning necessary for the Lessee's use during the term of this contract deemed necessary by the Facility Manager if the event requires an unusually heavy demand for such utilities. The Lessor shall not be held responsible for any loss or damage resulting from any lack of heat, water, lights or air conditioning due to an act of God, acts by the Lessee or its guests or the failure of equipment lo operate or function properly through no fault of the Lessor or its agents.

I0. **UNAVAILABILITY OF PREMISES**, In any case in which the premises of the Lessor or any premises covered by this agreement are damaged by fire, flood or other cause, or if any other casualty or unforeseen occurrence shall render the fulfillment of this contract by the Lessor impossible, then the term of this contract shall end ru1d the Lessee shall be liable only for fees up lo the time of such tcm1ination. The Lessee hereby waives and releases any claim for damages or compensation on account of such termination.

11. **RELEASE OF LIABILITY**: The Lessee agrees to save and hold harmless the Lessor and Lafayette County, Mississippi of and from any and all expenses, damages, claims, demru1ds or liability by or to the public, employees or guests of the Lessee and all others on account of or occasioned by the negligent installation, construction, repair, alteration, maintenance or operation of any structure, device, machine, enclosure, amusement, entertainment or commodity or by any activity pertaining to this lease, or by any act or omission, negligent or otherwise of Lessee or its patrons when on or about to enter or exit the premises herein leased to Lessee.

12. **ASSIGNABILITY**, The Lessee's rights under this lease shall not be assigned without prior written approval of the Facility Director.

13, **COLLATERAL CONTRACTS/PERMITS/Licenses, AND PERMISSION.** The Lessee shall be responsible for all other contracts, obligations, and expenditures made in connection with its use or the leased premises. By way of illustration and not limitation, these contracts may include entertainment, catering, fees, and licenses, insurance, special furnishings or decoration, staffing, etc. The Lessee shall be responsible for the procurement and expenses of all licenses, permits and union and trade organization clearances required for use of the leased premises for the purpose staled. The Lessee shall also be responsible for obtaining permission of the Facility Director for all events.

14. **RENTAL RATES**. The Lessee agrees to pay the charges listed on the Confirmation Sheet, in exchange for the use of the leased premises and any provided services, Room rental rates include initial set-up of chairs and tables, basic electricity (110 volt), and other itemized foes on the Confirmation Sheet.

15. **RELEASE OF LIBABLITY CATERING**: The Oxford Conference Center cannot be held responsible

for any food or beverage served through a participating caterer.

## POLICIES;

1. The Lessee and any service provider rendering services at the Lafayette County Multi-Purpose facility for the Lessee must be in compliance with all Federal and State laws and regulations as well as all Lafayette County and City of Oxford ordinances.
2. The Lessee shall be responsible for describing the use and nature of events on the leased premises and shall be required to obtain written permission from the Facility Director for all activities that take place.
3. Room rental is for a consecutive eight-hour period, ending with the event end lime. This eight-hour rental shall include any decorating, actual event and tear-down time. If more time is needed, an hourly rate can be assessed.
4. Smoking or other tobacco products is not allowed inside any of the leased premises at any time.
5. All Catering must be done by an approved Catering Member. No exceptions.
   a. Catering will be billed through the [_____]..
   b. Limited Catering kitchen rental is available. The rates for kitchen use will be set out on the Confirmation Sheet. The Lessee shall he responsible for the kitchen in accordance with the terms herein if the Caterer uses the kitchen.
   c.. The Lessee may rent the facility kitchen(s) for an amount set out on the Confirmation Sheet. The kitchen must be cleaned and left in a condition equivalent to that which it was found. Clean-up shall include sweeping the floors, cleaning the counter tops, removal of all food and drinks from sinks, shelves, counter tops, drawers, etc, All materials not belonging to the Facility must be removed along with any and all refuse. All refuse must be securely bagged, tied and placed in !he premises dumpster. OCC is not responsible for any items left in kitchen
6. No items may be hung, attached, or suspended from the walls or ceilings without written permission from the Facility Director. The use of nails or other destructive implements is strictly prohibited. Additional foes may apply.
7. No animals or pets other than legitimate assistance animals are allowed in the facility without written permission from the Facility Director.
8. A separate refundable Damage Deposit shall be charged to insure the return of the Facility to the condition in which it was found. All facilities must he returned to the condition in which they were found by the time specified in the Lease Agreement. This includes, but shall not he limited lo, the removal of all materials and waste from the leased, parking, and common areas, the clean-up of all spills and the return of facility equipment to its original location. The Damage Deposit will be returned within 30 days if the Lessee fulfills their obligation in this paragraph. If the facility is not returned to the condition in which it was found, then the Damage Deposit may be withheld, and additional charges may be imposed upon correction of the problems by Facility staff. The Damage Deposit is due in full before the event. The Damage Deposit will not be used to off-set any event- related fees.
9, The throwing of rice, bird seed and rose petals as well as the use of sparklers and other flammable devices is prohibited within the leased premises. These items may be thrown or distributed outside premises buildings with express written permission of the Facility Director. An additional fee may apply. The throwing or distribution of confetti is strictly prohibited on all premises. Use of sparklers outside will require permission of the Facility Director.

10. The Lessor shall not be liable for any items left at the Facility.
11. The Lessor is not responsible and shall not be held liable for loss or damage to vehicles or property placed in or upon the premises.
12. The Lessee shall not admit or cause lo be present any number of persons beyond the maximum capacity of the leased premises as determined by the Facility Manager, or the amount of people listed on the Confirmation Sheet. In either case, the Facility event staff may shut the event down immediately with no refund of any fees.

13. The Lessor shall have the right to move the Lessee into any room al the Lessor's discretion. Should the Lessee be moved, no additional room rental cost will be incurred. The Lessor will make every attempt to keep the originally booked room and in no case shall the Lessee be moved into a room of less size without their express, written permission.

### I will be having alcohol served at my event:  YES___     NO

The Lessee, by signing this Lease Agreement and Policies, agrees that it has read, understood, and assented to all the provisions previously recited as well as any other rules, regulations or policies separately provided. The Lessee also understands that violation of any of the previous provisions is subject to default of the Lease Agreement, fines, suspension from the facility and/or prosecution.


_____          _____
Lessee Signature                                        Date


_____          _____
Lessor Signature                                        Date