## DECLARATION OF JOHN RASH

I, John Rash, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is John Rash. I am a resident of Oxford, Lafayette County, Mississippi. I am a documentary filmmaker, photographer, visual artist, and educator.

2. For the past 3 years, I have organized an annual art event, titled PROJECT(ion), as part of the Oxford Fringe Festival. This year's event is scheduled for August 8, 2020. For the past two years, artists have produced light installations. Last year, the event included projections on the Lafayette County Courthouse. A photo from this event is attached as Exhibit 1.

3. On the grounds of the Lafayette County Courthouse stands a confederate monument. The County Courthouse is in the center of the Oxford town square, which is surrounded by bars, restaurants and stores. An intermittent iron fence surrounds the Courthouse and its grounds. There are breaks for steps that lead onto the grounds and also a large entrance onto the grounds. The Oxford Square is often filled with people visiting all of the attractions there, and the County Courthouse grounds function as a small park.

4. Every Friday and Saturday for at least 3 weeks in July 2020, there have been protests at the County Courthouse confederate statue. Across the street from the statue, there have been protests nearly every day in June and July 2020. These events included a march led by University of Mississippi football players that drew hundreds of marchers. There have also been "take it down" protests at the Chancery Courthouse. Protestors advocating to keep the statue have also assembled in Oxford and on the County Courthouse grounds.



Page 1 of 5

To the best of my knowledge, there has been no incidence of violence at any of these events. They have been peaceful.

5. On Saturday night, June 20, 2020, for about 30 minutes, someone projected "Take It Down" onto the County Courthouse confederate monument. Law enforcement had the artist remove the projection because the light was projecting across traffic and according to the police created safety concerns. To deal with this issue, my August 8th event planned to have all projections contained within the courthouse lawn, so there are no lights crossing traffic.

6. On July 4, a group supporting the confederate statue held an event on the County Courthouse lawn. At this event they displayed a confederate flag in front of the courthouse, above speakers standing on the stairs leading into the building. A photo of this event is attached as Exhibit 2. They also stood under the confederate statute with flags and signs. At this event, I was documenting the events and took my camera to the pro-statue protest area at which point a Lafayette County Sheriff's deputy told me to "go to your side," meaning the area of the counter protestors advocating for taking down the statue.

7. On July 6, the Board of Supervisors voted unanimously to keep the monument in place. There was a protest the same day with people both for and against the confederate statue.

8. On July 7, 2020, I contacted the County Administrator's office via email regarding my permit application. A copy of this email is attached as Exhibit 3. I did not receive a response to my initial email.

9. On July 14, 2020, I went to the Chancery Court Building to the County Administrator's office in person to get a permit to hold PROJECT(ion) on August 8, 2020. I inquired

about my previous email and was informed that the Administrator was out of the office the week prior, and that any application submitted prior to the July 20 Board of Supervisors meeting would be considered.

10. This year's event would be after dusk and project still and moving video onto the County Courthouse walls, lawn and confederate monument. When filing my application I was told that if I had 4 or less people, I wouldn't need a permit. Because I did not know how many people would ultimately attend the event, I estimated I would have 30 people.

11. On July 15, the Administrator, Lisa Carwyle, called and asked what was needed in terms of set up. I said it would be minimal. Ms. Carwyle seemed satisfied with my answers and said the Board of Supervisors meets on July 20 and the permit would be decided then.

12. On July 16, someone from the Lafayette County Sheriff's office called me and asked, "Really what I want to know, is there anything that is going to talk about the monument or things that have been going on in Oxford lately." I said it was likely, because the visual art at issue involves addressing current social issues, but I couldn't be sure, as artists would be in control of their own work. The Sheriff's employee responded, "If that's the case, I have to get back to you." I replied, "It doesn't seem appropriate to make this decision based on content." The Sheriff's employee responded, "Well we'll just have to see and get back to you."

13. On July 18, there was a protest for people advocating to take the confederate statute down. I was documenting the events and was speaking with one of the protestors after the event was over. The protestor's sign was lying face down in the grass of the County Courthouse lawn. Two Lafayette County Sheriff's Deputies came over and told the man

he could not have a protest sign on the lawn. They made him take the sign to his car before I could continue speaking with him.

14. I understand that when the Board of Supervisors met on July 20, they changed the regulation governing events at the County Courthouse. Ms. Carwyle denied my permit application by email dated July 23, 2020. A copy of this email is attached as Exhibit 4. The email states: "I've denied the permit due to a change in the County's permit policy. No permits will be issued after dusk, due to security issues." A copy of my denied permit application is attached as Exhibit 5.

15. After receiving this email, I contacted the County Administrator and said that in light of the permit denial I would hold the event unpermitted and ensure there would be 4 or less people on the lawn, in order to comply with the policy. She said she had to check whether that was legal. She responded by email dated July 27, 2020, which stated, "[T]he Courthouse grounds, including the statue area, are closed for any gathering after dark, regardless of permit requirements. So you would not be allowed to be on the grounds from thirty minutes prior to dusk to sunrise." A copy of this email is attached as Exhibit 6.

16. The City of Oxford granted a permit for a location adjacent to the County Courthouse for an event after dark for this year's Oxford Fringe Festival.

17. In 2019, as part of the Fringe Festival, the Oxford Film Festival projected films on the County Courthouse lawn. A photo of this event is attached as Exhibit 7.

18. The projection on the courthouse is more accessible for people who want to see the exhibition while remaining in their car during the COVID-19 pandemic. The other

exhibition space for this year's PROJECT(ion) requires viewers to get out of their cars and walk through it.

19. To properly see art projections, it must be dark. Closure of the County Courthouse grounds from dusk till dawn effectively prevents my event from happening there.

20. Oxford Fringe Festival is scheduled for the weekend of August 7-9. It is currently unclear whether I can hold my event at the County Courthouse and this has created problems planning the event and scheduling artists to participate. I want to be able to tell the artists that they can exhibit their art for the event at the County Courthouse, but I am not sure I can. I have had to change preparation for the event as a result of the County's and Sheriff's actions and some artists have backed out.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. **Executed on July 30, 2020 at Oxford, MS.**

By: _____
John Rash