IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
Oxford Division

| | |
|---|---|
| JOHN RASH, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) Civil No. 3:20-cv-00224-NBB-RP |
| v. | ) |
| | ) |
| LAFAYETTE COUNTY, MISSISSIPPI, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JOHN RASH'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE**

Plaintiff John Rash respectfully submits this Memorandum of Law in support of his Response to Defendant's Motion to Strike Plaintiff's Exhibits 45 through 48 from Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 86).

**ARGUMENT**

Defendant's motion to strike seeks to strike four exhibits from Plaintiff's opposition to Defendant's Motion for Summary Judgment—four articles published in the local and national press—on the basis that Plaintiff did not produce copies of those materials to Defendant in discovery. Defendant's motion should be denied.

Plaintiff submitted the materials at issue to corroborate other testimonial and documentary evidence (which Defendant does not challenge) rebutting Defendant's unsupported assertion, made for the first time in Defendant's summary judgment papers, that the grounds of the Lafayette County Courthouse prior to 2015 were "reserved for government functions" and "restricted to individuals who had court and related business within the Courthouse," with the sole exception

1

that the County Administrator would "occasionally grant requests for use of the grounds by citizens" for certain community functions. ECF No. 25 at 3. In contrast to Defendant's assertion about use of the Courthouse Grounds prior to 2015, the materials at issue contain nothing new or surprising, especially to any long-term visitor to or resident of Oxford and its Courthouse Square. Rather, the cited comments, made years or decades ago by individuals with no connection to this lawsuit, reflect public perception of the Courthouse Grounds' historical role in the community as a public forum and gathering space:

- Exhibit 45, "Lafayette County Courthouse Remains Anchor of Community," Daily Journal, Nov. 26, 2012, was cited for the proposition: "Throughout the life of Oxford and Lafayette County, the courthouse square has been an anchor of the community."

- The following recollections, sourced to J.R. Cofield, were cited to Exhibit 46, "The Square," Hotty Toddy, May 21, 2013: "Saturday was always the busiest day of the week. . . . 'Some Saturday's the Courthouse lawn was circus like. Spring, summer, and fall, farmers set up rough stalls to sell their produce. . . . The Courthouse lawn also attracted some "blaring" sermons from traveling evangelist. Through the years many things have change around the town, but the Courthouse lawn is still dead center for Oxford.'"

- Exhibit 47, "William Faulkner's Mississippi," The Washington Post, June 3, 1984, was cited for its historical narration of "the life of the town" as seen from the square: "the pickup trucks with rifles in their gun-racks; the country people, white and black, who came into town on Saturdays and stood on the corners of the square, socializing as they waited for their rides home; the old men who sat on benches outside the courthouse."

- Exhibit 48, "The Original Square Squatters," Hotty Toddy, May 13, 2013, was cited for the notion that "[s]everal generations of Oxonians have great stories from their time hanging out at the statue of the Confederate soldier in Oxford. It's been going on for 100 years among young and old alike."

ECF No. 78 at 15–16. Such publicly-available background materials are appropriately considered by the Court in its analysis of the forum status of the Courthouse Grounds, and Defendant did not suffer any prejudice from any allegedly late or deficient disclosure.

Courts properly consider materials in the public record when conducting First Amendment forum analysis. For example, the County's primary authority in support of its forum analysis—the D.C. Circuit's ruling in *Hodge v. Talkin*, 799 F.3d 1145 (D.C. Cir. 2015)—made extensive

2

reference to a piece written by Justice Breyer in the Supreme Court's journal, as well as other secondary sources, in analyzing the history, structure, function, and public perception of the forum at issue in that case. *See Hodge*, 799 F.3d at 1150–51, 1158–59 (relying on, *inter alia*, *Statement Concerning the Supreme Court's Front Entrance*, 2009 J. Sup.Ct. U.S. 831 (2010) (Breyer, J.), Fred J. Maroon & Suzy Maroon, *The Supreme Court of the United States* (1996), and Pamela Scott & Antoinette J. Lee, *Buildings of the District of Columbia* (1993)). This consultation of publicly-available materials and secondary sources bearing on the social and historical context of a particular forum is appropriately part of the holistic inquiry contemplated by First Amendment forum analysis, regardless of whether such source materials are produced by litigants in the course of discovery (it appears the court in *Hodge* did its own research).

Importantly, the materials at issue were not located in Plaintiff's files, but were (and are) equally available in the public domain to both parties. *See, e.g.*, *Hobson v. Mattis*, No. 3:14-CV-01540, 2017 WL 11475404, at *7 (M.D. Tenn. Sept. 11, 2017) ("[T]here is no discovery obligation to produce documents in the public record that are equally available to both parties."); *Krause v. Buffalo and Erie County Workforce Development Consortium, Inc.*, 425 F. Supp. 2d 352, 374 (W.D.N.Y. 2006) (denying motion to strike publicly-available documents, and reasoning that "the records are public documents which are equally accessible to all parties"); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.*, 242 F.R.D. 1, 11 (D.D.C. 2007) ("Typically, courts do not order discovery of public records which are equally accessible to all parties."); *cf. Landrum v. Banana Wheels, Inc. of Houston*, No. CIV. A. 89-4063, 1990 WL 163635, at *2 (E.D. La. Oct. 18, 1990) (denying motion to compel discovery that is "part of the public record, and is equally accessible to the [movant]"); *Bass v. Gulf Oil Corp.*, 304 F. Supp. 1041, 1050 (S.D. Miss. 1969) (same).

3

Moreover, Plaintiff collected and submitted these materials in response to an argument Defendant raised regarding the pre-2015 usage of the Courthouse Grounds for the first time in its summary judgment briefing. Defendant made that argument without citing competent supporting evidence and without having developed any such evidence during discovery, and it should be rejected for that reason alone. ECF No. 78 at 11 n.7, 18. But having chosen to make sweeping, unfounded assertions about the historical usage of the Courthouse Grounds, Defendant is in no way prejudiced by Plaintiff's submission of public documents reflecting the historical record. These materials are not, for instance, evidence from Plaintiff's files for which Defendant did not have the opportunity to question Plaintiff during the discovery process.[1] Defendant also fails to state what discovery it might have sought had these materials been produced earlier. Absent prejudice, which Defendant has not articulated, any failure to disclose or late disclosure was harmless under Fed. R. Civ. P. 37(c)(1). *See, e.g.*, *S.L. ex rel. Lenderman v. St. Louis Police Dept. Board of Commissioners*, 2012 WL 3564030, at *9 n.8 (E.D. Mo. 2012), *aff'd in part, appeal dismissed in part*, 725 F.3d 843 (8th Cir. 2013) ("Plaintiff states that she gathered the [newspaper] articles in the process of preparing her response to the summary judgment motions. The Court concludes that the failure to disclose the articles at an earlier time was substantially justified. The articles were equally available to both sides and thus the failure to disclose is also harmless [under Fed. R. Civ. P. 37(c)(1)]."); *San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1224-25 (N.D. Ala. 2012) (failure to disclose public records is harmless under Rule 37).

---

[1] Defendant took no depositions during discovery. In addition, Plaintiff in his written discovery, including his Response to Defendant's Interrogatory Number 4, disclosed his intent to use "any other publicly-available document that Plaintiff may deem relevant to this case," which covers these exhibits and put Defendant on notice of their use.

4

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike Plaintiff's Exhibits 45 through 48 from Plaintiff's Response to Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

Dated: March 19, 2021

/s/ Joshua Tom

| | |
|---|---|
| SIMPSON THACHER & BARTLETT LLP<br>Jonathan K. Youngwood (*pro hac vice*)<br>Isaac Rethy (*pro hac vice*)<br>425 Lexington Avenue<br>New York, NY 10017<br>(212) 455-2000<br>jyoungwood@stblaw.com<br>irethy@stblaw.com<br><br>C. Jackson Williams, MS Bar No. 7226<br>P.O. Box 69<br>Taylor, MS 38673<br>Phone: (662) 701-9447<br>cjxn@mac.com | AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI FOUNDATION, INC.<br>Joshua Tom, MS Bar. No 105392<br>Landon Thames, MS Bar No. 105127<br>P.O. Box 2242<br>Jackson, MS 39225<br>Phone: (601) 354-3408<br>jtom@aclu-ms.org<br>lthames@aclu-ms.org<br><br>*Attorneys for Plaintiff John Rash* |

## CERTIFICATE OF SERVICE

I, Joshua Tom, hereby certify that on March 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

/s/ Joshua Tom
Joshua Tom

5