**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**Oxford Division**

| | |
|---|---|
| JOHN RASH, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) Civil No. 3:20-cv-00224-NBB-RP |
| v. | ) |
| | ) |
| LAFAYETTE COUNTY, MISSISSIPPI, | ) |
| | ) |
| *Defendant*. | ) |
| | ) |
| | ) |

## PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF HIS MOTIONS IN LIMINE

Pursuant to Section 8 of the court's September 15, 2021 Case Management Order (ECF No. 36), Plaintiff John Rash respectfully submits this omnibus memorandum of law in support of his motions in limine.

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *38 Films, LLC v. Yamano*, No. 3:16-CV-00198-MPM-RP, 2017 WL 7038122, at *1 (N.D. Miss. Nov. 6, 2017). *See also Equal Emp. Opportunity Comm'n v. First Metropolitan Fin. Serv., Inc.*, No. 1:18-CV-177-SA-DAS, 2021 WL 261671, at *1 (N.D. Miss. Jan. 26, 2021) ("[T]he purpose of motions in limine is … to identify specific issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion in limine.") (internal quotations omitted).

This case will be tried to the Court, not to a jury, so questions of jury confusion or of ensuring that unduly prejudicial evidence does not taint the jury's perceptions are absent.

Nonetheless, "there are trial management benefits to a motion in limine that are equally beneficial to a bench or jury trial." *Bd. of California Winery Workers' Pension Tr. Fund v. Vineyards*, No. 1:17-CV-00364-SAB, 2018 WL 4242068, at *2 (E.D. Cal. Sept. 6, 2018). A motion in limine ruling provides valuable guidance that "[t]he parties may then consider … when formulating their trial strategy." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). It also "aid[s] the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Thus, even in a bench trial, as here, a motion in limine is "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). *See Estate of Rick v. Stevens*, No. C 00-4144-MWB, 2002 WL 1713301, at *3 (N.D. Iowa July 2, 2002) ("These observations concerning the virtues of trial management and clarification of the focus upon pertinent issues that can be gained from a motion in limine are just as applicable when the trial court, rather than a jury, is the finder of fact.").

## MOTIONS IN LIMINE

I. **MOTION IN LIMINE I: EXCLUDE HEARSAY REGARDING THE FORMER COUNTY ADMINISTRATOR'S VIEWS REGARDING THE COUNTY'S ENACTMENT OF THE FACILITY USE POLICY**

This is a First Amendment case involving restrictions imposed by Defendant Lafayette County, Mississippi ("Defendant" or the "County") on use of the Lafayette County courthouse grounds (the "Courthouse Grounds"), located in the center of the Oxford, Mississippi town square. As detailed in the parties' pending motions for summary judgment, a central disputed question is the forum status of the Courthouse Grounds. During discovery, the County offered no evidence of the usage of the Courthouse Grounds prior to the enactment of the Facility Use Policy in 2015.

Nonetheless, at summary judgment, the County made the argument that the Courthouse Grounds prior to 2015 were "reserved for government functions" and "restricted to individuals who had court and related business within the Courthouse," and that the only exception was that the County Administrator would "occasionally grant requests for use of the grounds by citizens" for certain community functions. ECF No. 69 at 3. The only evidence cited by the County as support for this position was the deposition testimony of former County supervisor Jeff Busby and the text of the Policy itself. *See id.* at 3–5. However, this testimony relayed statements made by former County Administrator Joseph Johnson, rather than Mr. Busby's personal knowledge. *See* Ex. 1 (Busby Tr.) at 35:10-13 ("[Our county administrator, I'm assuming . . . said we had a lot more requests to use the building – use the grounds."); *id.* at 36:3-10 ("Q: So the impetus behind adopting this facility use policy in 2015 was county administrator Joseph Johnson? A: Yes, sir. I think he brought it to our attention that we – he felt like that we needed to have a facility use policy because of the requests that he was getting for use of the facilities at that time."). It is therefore inadmissible hearsay. *See* Fed. R. Evid. 802. And, Mr. Johnson was not identified in Defendant's initial disclosures. A non-hearsay source for this testimony is therefore absent.

Due to the centrality of this argument about the pre-2015 use of the Courthouse Grounds to Defendant's motion for summary judgment, an order is appropriate precluding the introduction of such hearsay testimony at trial, or of argument based on such hearsay, including the unsupported negative inference from the enactment of the Facility Use Policy in 2015 that the Courthouse Grounds were not in use by the public prior to its enactment. No competent evidence supports such arguments, and, having failed to develop competent evidence in discovery, Defendant cannot now present such evidence at trial through evidentiarily improper means.

II.     **MOTION IN LIMINE II: EXCLUDE EVIDENCE OF PUBLIC SAFETY OR TRAFFIC SAFETY ISSUES OR INCIDENTS NOT DISCLOSED IN DEFENDANT'S INTERROGATORY RESPONSES**

Defendant's prohibition on use of the Courthouse Grounds each day during the period between thirty minutes before dusk and dawn is a central issue in this action. Defendant has contended that this restriction is appropriate because "the after business hours use of the grounds posed an undue pedestrian and traffic safety risk given the poor lighting conditions, heavy pedestrian and traffic patterns around the courthouse, and the reduced manpower during the evening shifts." ECF No. 69 at 7. It is nearly certain that Defendant will make the same arguments at trial. Yet Defendant failed to produce any documents substantiating such public safety or traffic safety risks in discovery, and failed to identify any specific public safety or traffic safety incidents in its interrogatory responses. *See* Ex. 6 (Defendant's interrogatory responses). Nor were any such incidents identified in deposition testimony given by the Lafayette County Sheriff or the Oxford Chief of Police. *See* Ex. 2 (East Tr.) at 184:3-10 ("During the time you've been sheriff, to your knowledge, has your office ever arrested or cited someone for being on courthouse grounds? A. No, sir, that I can recall. Q. Okay. Whether you were sheriff or not, were you aware of anyone being arrested or cited for being on courthouse grounds? A. No, sir . . ."); Ex. 3 (McCutchen Tr.) at 39:24-40:5; 49:2-13; 59:16-60:6 ("Q. Okay. Of these arrests that you list, were any made on the courthouse grounds or on the grounds that constitute the Confederate statue outside the courthouse? A. No, sir. Q. Okay, Do you know if any of these arrests related to permitted activities? A. Not to my knowledge. . . . [Q.] . .. [T]here's a list of safety concerns. . . . I don't see anything specific in this list . . . that relates to the courthouse grounds. A. No, sir. . . And nothing here that specifically refers to the statue, correct? A. Correct.").

Because no specific public safety or traffic safety incidents contributing to the enactment of the challenged policies were disclosed during discovery, Defendant should be precluded from

introducing evidence of any alleged public safety or traffic safety incident purportedly relevant to the Courthouse grounds at trial.

### III.     MOTION IN LIMINE III:  EXCLUDE THE JANUARY 2021 FACILITY USE POLICY AS EVIDENCE OF THE COUNTY'S PRE-LITIGATION POSITION

On January 13, 2021, Defendant produced a revised version of the Facility Use Policy that counsel for Defendant claimed "reflect[s] the year 2020 changes."  *See* Ex. 7 (Jan. 13, 2021 email from D. O'Donnell to J. Youngwood).  That document, which County officials voted to adopt on January 4, 2021 (*see* Ex. 5 (Larson Tr.) at 93:13-94:3), contains the following language:

> **Courthouse Grounds**. The use of the Courthouse Exterior Grounds, defined to include the outside areas contiguous to the Circuit Courthouse and the area encompassing the confederate memorial, ***is limited given that it is primarily a place of court business***. Permits are required for all uses except no permit is required for use of the area immediately surrounding the confederate memorial for groups of four or less. No use or user(s) of the Courthouse grounds, permitted or otherwise, ***may block or impede pedestrian use of the sidewalks*** leading to or from, or within, the Courthouse grounds.

*See* Ex. 8 (Jan. 4, 2021 Facility Use Policy) (emphasis added).  This language—and, in particular, the emphasized phrases—appears to reflect an attempt by the County to shape its policy to match its current litigation position, which emphasizes the purported impacts use of the Courthouse Grounds might have on court business.  *See* ECF No. 69 at 3, 21, 28.  Notably, despite adopting this language on January 4, 2021, the County did not produce a copy of this document (which was not otherwise publicly available) until January 13, 2021, after depositions had gone forward in the intervening days, and only did so after the issue came up in response to Plaintiff's questioning at a deposition and Plaintiff requested that it be produced.  *See* Ex. 4 (Roberts Tr.) at 51:14-53:16; 109:16-111:5; 142:12-143:14.

The County should be precluded from relying at trial on the after-the-fact justification for the policies at issue contained in this document.  In the First Amendment context, "after-the-fact

explanations cannot help a law survive." *McLaughlin v. City of Lowell*, 140 F. Supp. 3d 177, 190 (D. Mass. 2015). *See also Yellowbear v. Lampert*, 741 F.3d 48, 59 (10th Cir. 2014) (in analogous RLUIPA context "post-hoc rationalizations" cannot prove a compelling interest); *United States v. Virginia*, 518 U.S. 515, 533 (1996) (For intermediate scrutiny on the basis of gender, "[t]he justification must be genuine, not hypothesized or invented post hoc in response to litigation.").

This is consistent with the general rule of public law that a "*post hoc* rationalization" that does not represent the "[government's] fair and considered judgment on the matter in question" is not entitled to deference. *Auer v. Robbins,* 519 U.S. 452, 462 (1997). *See also Brown v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212 (1988) (explaining that "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate"); *Texas Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 777 (5th Cir. 2010). In keeping with this, the County cannot use its control over the ordinances at issue to bolster its record after the fact. *See McLaughlin*, 140 F. Supp. 3d at 190 ("The City, having officially put forward its reasons for the Downtown Panhandling provisions, cannot add to those reasons in litigation."). It should therefore be precluded from relying on the self-serving justifications for its position contained in the January 4, 2021 revised Facility Use Policy at trial.

## IV.  MOTION IN LIMINE IV:  PRE-ADMIT CERTAIN PHOTOGRAPHIC AND VIDEO EVIDENCE

Motions in limine allow parties to "seek a ruling from the court as to the admissibility of any party's evidence in advance of trial[.]" 1 *Federal Evidence Practice Guide* §3.04(4)(a) (Matthew Bender & Co., Inc. 2019). Thus, parties "may use in limine motions defensively to request a pretrial ruling precluding the anticipated evidence of the adversary or may use them offensively to prequalify favorable evidence." *Id.* at §3.04(4)(b). Indeed, motions in limine to pre-admit exhibits are frequently granted to provide early rulings on admissibility or other

preliminary questions under Rule 104, as such rulings streamline trial and avoid the need for "lengthy argument at, or interruption of the trial." *Id.* at §3.04(4)(a).

Plaintiff respectfully moves the Court to enter an order finding the photographs and video produced by Plaintiff at Bates numbers RASH_2656-2722 admissible, pre-admitting these items into evidence, and authorizing Plaintiff's counsel to introduce such materials into evidence, including during Plaintiff's opening statement. These materials consist of photographs (*See* Ex. 9 (RASH_2656-2720)) and video (*See* Ex. 10 (RASH_2721-2722)) of the Courthouse and the Square taken on January 14, 2021 from the ground and from the air via a drone. Joe York, a Water Valley, Mississippi-based filmmaker, took these pictures and video at the direction of counsel for Plaintiff, who retained Mr. York for this purpose. Mr. York attested to the circumstances of his engagement and the creation of these materials in a February 2, 2021 declaration. *See* Ex. 11 (York Decl.).

The photographs and video are true, fair, and accurate representations of the Courthouse and the Square, and the physical characteristics of the Courthouse and the Square are of obvious relevance in this case, which concerns restrictions on use of the Courthouse Grounds and the Courthouse Grounds' First Amendment status. Mr. York's declaration suffices to authenticate them and lay the proper foundation for their admissibility, and there is no need to cross-examine Mr. York prior to admitting these documents into evidence. Pre-admission of these materials will increase the efficiency of the trial process by allowing for these materials to be used without the need to separately admit them into evidence or to call Mr. York as a witness.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff John Rash's foregoing motions in limine should be granted.

Respectfully submitted,

Dated: April 12, 2021

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
irethy@stblaw.com

C. Jackson Williams, MS Bar No. 7226
P.O. Box 69
Taylor, MS 38673
Phone: (662) 701-9447
cjxn@mac.com

_____ /s/ Joshua Tom
AMERICAN CIVIL LIBERTIES UNION OF
MISSISSIPPI FOUNDATION, INC.
Joshua Tom, MS Bar. No 105392
Landon Thames, MS Bar No. 105127
P.O. Box 2242
Jackson, MS 39225
Phone: (601) 354-3408
jtom@aclu-ms.org
lthames@aclu-ms.org

*Attorneys for Plaintiff John Rash*

8

## CERTIFICATE OF SERVICE

I, Joshua Tom, hereby certify that on April 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

/s/ Joshua Tom
Joshua Tom